Avenell SCOTT *v.* STATE of Arkansas

CA CR 98-1396                                    10 S.W.3d 476

Court of Appeals of Arkansas
Division II
Opinion delivered February 9, 2000

*G.B. "Bing" Colvin, III*, Public Defender, for appellant.

*Mark Pryor*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.

JOHN F. STROUD, JR., Judge. Appellant, Avenell Scott, was tried by a jury and found guilty of the Class C felony of theft of public benefits of less than $2,500 but more than $200. The trial court suspended imposition of sentence for two years subject to conditions that included restitution of $4,650.19 to the Arkansas Department of Human Services. Ms. Scott subsequently filed a *pro se* motion for arrest of judgment and dismissal of charges based upon the statute of limitations. The trial court denied the motion on the basis that the statute-of-limitations defense had not been raised prior to trial. The appeal to this court originated as an *Anders* appeal, with appellant filing a *pro se* brief to which the State responded. We were not convinced by what was before us that the statute-of-limitations issue was so frivolous that it could be decided without adversary presentation. Accordingly, we directed counsel to rebrief the case in adversary form. *Scott v. State*, CR 98-1396, slip op. (Ark. App. July 7, 1999). He has done so, and the case is now before us for decision. We affirm.

### Waiver

First, we address the issue of whether appellant waived her statute-of-limitations argument, which was the basis upon which the trial court denied her motion. We conclude that she did not. As conceded by the State in its brief, our supreme court has held that the statute of limitations in a criminal case is "jurisdictional," and not subject to waiver:

> Unlike some of the civil statutes of limitation which are waived unless pleaded, this limitation of prosecution statute (§ 43-1602, *supra*) is jurisdictional. Under the express wording of the statute that "No person shall be prosecuted, tried and punished for any felony unless an indictment be found within three years after the commission of the offense," after three years (unless the running of the statute is tolled) a court is without power to try the case.

*Eckl v. State*, 312 Ark. 544, 851 S.W.2d 428 (1993) (quoting *Savage v. Hawkins*, 239 Ark. 658, 391 S.W.2d 18 (1965)). At the time *Eckl* was written, the statutory language of the statute of limitations had changed from that quoted in *Savage*, and was virtually identical to

the current statutory language. Consequently, the supreme court's holding in *Eckl* is equally applicable to the instant case, and we are bound to follow the decisions of our supreme court. Therefore, appellant's failure to raise the issue until after trial does not prohibit her from raising it on appeal.

## Statute of Limitations

Prosecution for a Class B, C, or D felony must be commenced within three years after its commission. Ark. Code Ann. § 5-1-109(b)(2) (Repl. 1997). "A prosecution is commenced when an arrest warrant or other process is issued based on an indictment, information, or other charging instrument, provided that such warrant or process is sought to be executed without unreasonable delay." Ark. Code Ann. § 5-1-109(f) (Repl. 1997).

Here, an information was filed on January 23, 1997, charging appellant with the Class B felony offense of theft of public benefits during the period January through December 1994, "by obtaining or retaining public benefits totaling in excess of $2,500 by means of false statement, misrepresentation, or through failure to disclose material fact used in making a determination as to her qualifications to receive public benefits." Also on January 23, 1997, a criminal summons was issued, but the summons was not returned until March 10, 1997. The date for plea and arraignment that was designated in that first summons was the same date that it was served, March 10, 1997, and the hearing was scheduled to begin just one hour after service was completed. Consequently, the summons was reissued on March 19, 1997. Its return notes that appellant could not be located prior to the designated court date of April 14, 1997. An alias bench warrant was issued on April 18, 1997. On September 24, 1997, the trial court directed the sheriff to provide information regarding the status of appellant's warrant, and on November 10, 1997, she made her first judicial appearance. We find nothing in the record to convince us that the delays in executing the summons were not reasonable. Accordingly, the prosecution in this case commenced on January 23, 1997.

The question then becomes, When did the statute of limitations begin to run on the offense of theft of public benefits? "For the purposes of this [statute-of-limitations] section, an offense is

committed either when every element occurs or, if a legislative purpose to prohibit a continuing course of conduct plainly appears, at the time the course of conduct or the defendant's complicity therein is terminated. Time starts to run on the day after the offense is committed." Ark. Code Ann. § 5-1-109(e) (Repl. 1997).

Theft of public benefits is defined in Arkansas Code Annotated section 5-36-202 (Repl. 1997):

(a) A person commits theft of public benefits if he *obtains or retains* public benefits from the Department of Human Services or any other state agency administering the distribution of such benefits:

(1) By means of any false statement, misrepresentation, or impersonation;

(2) Through failure to disclose a material fact used in making a determination as to such person's qualifications to receive public benefits; or

(3) Receives, retains, or disposes of public benefits knowing or having reason to know that such public benefits were obtained in violation of this subchapter.

(b) Presentation of false or fictitious information or failure to disclose a material fact in the process of obtaining or retaining public benefits shall be prima facie evidence of intent to commit theft of public benefits.

(Emphasis added.)

Here, the record establishes the following sequence of events:

8-28-92 Appellant was hired by McGehee Industries and remained employed from that date through the date of trial.

12-13-93 Appellant filed an application for food stamps while being recertified for the period January through March 1994. The application contained a statement that she would not receive earnings "this calendar month."

12-28-93 Appellant filed an application for AFDC/Medicaid assistance. She was being certified for AFDC benefits for six months, January through June

1994. The application contained a statement about her employment, benefits, and asset status.

3-23-94  Food Stamp Application and Interview contained a statement that appellant's only income at the time was $162 of AFDC, with no employment. She was being recertified for the period April through July 1994.

6-24-94  1)  Follow-up food stamp interview. Appellant stated that there had been no change in employment status nor sources of outside income. Recertified for food stamps for period July 1994 through June 1995.

2)  Application for AFDC/Medicaid. Appellant made similar statements.

Moreover, appellant testified that her husband was incarcerated in December 1993 on a two-year sentence but returned home on parole in December 1994, and that she "stopped" the benefits at that time. She admitted that she made false statements or held back information in her interviews so that she could get benefits, and that she knew she was unlawfully obtaining money.

Finally, a budget specialist for the Fraud Unit of Human Services testified that appellant was overpaid $2,145 for food stamps for the period January through December 1994; that she was overpaid $1,855 in AFDC benefits for the period January through December 1994; and that she was overpaid $650.19 in Medicaid benefits for the period February through December 1994.

We find the supreme court's opinion in *State v. Reeves*, 264 Ark. 622, 625-27, 574 S.W.2d 647, 649 (1978), extremely helpful in deciding the issue before us in the instant case. In *Reeves*, the supreme court determined that the offense of theft by receiving was a continuing offense. The similarity of the statutory language that the supreme court relied upon and the statutory language involved in this case convinces us that *Reeves* controls the outcome. As the supreme court explained in *Reeves*:

The question before us then is: when does the statute of limitations begin to run on the crime of theft by receiving committed by retaining possession of stolen property? The information filed specified that the offense was charged as a class C felony and

the value of the property was stated as in excess of $100, so the prosecution must have been commenced within three years after the commission of the offense. Ark. Stat. Ann. § 41-104(2)(b) (Repl. 1977). For the purposes of § 41-104, an offense is committed either when every element of the offense occurs, or, if a legislative purpose to prohibit a continuing course of conduct plainly appears, at the time the course of conduct or the defendant's complicity therein is terminated. Ark. Stat. Ann. § 41-104(5) (Repl. 1977). Appellee's alleged course of conduct of retaining the automobile and her complicity in its retention had not been terminated at the date alleged in the information. *By the very use of the word "retains," there was a clear intention of the General Assembly to make this aspect of the crime a continuing offense. The word "retain" means "to hold or continue to hold in possession or use; to continue to have, use, recognize, accept, etc.; to maintain in one's keeping; as to retain part of the money, one's position, one's faculties."* Webster's New International Dictionary, 2d Ed. See also, Webster's Third New International Dictionary. Thus, retaining the automobile was a continuing course of conduct. There is nothing in the definition of "receiving" in Ark. Stat. Ann. § 41-2206(2) that leads to a contrary conclusion. Here again, the commentary to § 41-104 makes the legislative intention quite clear by the following:

> Crucial to the application of a criminal statute of limitations is the determination of when the offense is committed and when the prosecution is commenced. Subsections (5) and (6) answer these questions. The substance of subsection (5) is that the limitations period begins to run when the defendant could first be prosecuted for the offense. *The subsection also states a special rule applicable to statutes prohibiting a continuing course of conduct. For example, if possession of an object is declared illegal, the elements of the offense are present from the moment defendant takes possession, but the limitations period does not begin to run until his possession ends.*

We treated the subject of continuing offenses in *Britt v. State*, 261 Ark. 488, 549 S.W.2d 84. The offense here is clearly a continuing one under the definition used there. The definition we adopted was that a continuing offense is *"....a continuous, unlawful act or series of acts set on foot by a single impulse and operated by an unintermittent force, however long a time it may occupy; an offense which continues day by day; a breach of the criminal law, not terminated by a single act or fact, but subsisting for a definite period and intended to cover or apply to successive similar obligations or occurrences."* Retaining stolen property, as defined by the statute, fits that definition.

(Emphasis added.)

Moreover, in *Britt v. State*, 261 Ark. 488, 549 S.W.2d 84 (1977), the supreme court listed several examples of continuous offenses: carrying a concealed weapon; continuous keeping of a gaming or a disorderly house; desertion and neglect to provide for family; embezzlement; engaging in business without a license; maintaining a nuisance; offenses relating to intoxicating liquors; violating a Sunday law; and obtaining a license from a state medical board by false or fraudulent representations. With respect to the last example, the court quoted with approval from *Eclectic State Medical Board v. Beatty*, 203 Ark. 294, 156 S.W.2d 246 (1941): "Every time such person undertakes to practice under his license he keeps up and continues the fraud initiated when he obtained by false representations his pretended authority to practice."

In the instant case, "obtains or retains" is a critical element of the offense of theft of public benefits. Ark. Code Ann. § 5-36-202(a) (Repl. 1997). Thus, even though appellant completed applications containing false statements on December 13, 1993, and December 28, 1993, all of the elements of the offense of theft of public benefits would not have been present until she actually obtained and/or retained the public benefits. Moreover, the exact date that appellant first obtained the illegal benefits was not established, just that they began sometime in January 1994. Similar to the statutory language in *Reeves*, however, the legislature's use of the term "retains" in defining the elements of the offense of theft of public benefits shows a clear intention to make this aspect of the crime a continuing offense. Also, similar to the example given in *Britt, supra*, concerning a medical license based on false representations, every time appellant received public benefits based upon the December 1993 applications, she continued the fraud initiated when she obtained by her false representations the right to receive such public benefits.

Accordingly, in line with the supreme court decisions in *Reeves* and *Britt*, we conclude that appellant's theft of public benefits arising from her December 1993 applications amounted to a continuous, unlawful series of acts "set on foot" by the single impulse of her false applications and that those applications then operated by an unintermittent force for as long as appellant obtained and received benefits based upon those applications. Therefore, even

though appellant's completion of two of the applications for public benefits occurred in December 1993, which was more than three years before the prosecution commenced, and even though the record does not establish exactly when she received the first of the illegal benefits, those factors do not matter because we find that the offense of theft of public benefits is a continuing offense and that the statute of limitations had not expired when the prosecution commenced in this case.

Affirmed.

HART and GRIFFEN, JJ., agree.