Dennis CAMERON *v.* STATE of Arkansas

CA CR 05-483                                    224 S.W.3d 559

Court of Appeals of Arkansas
Opinion delivered January 25, 2006

---

*James Law Firm*, by: *William O. James Jr.*, for appellant.

*Mike Beebe*, Ark. Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for appellee.

WENDELL L. GRIFFEN, Judge. Dennis Cameron appeals from his two convictions for theft of property in excess of $2500. He argues that the trial court erred in denying his motion to dismiss the charges because the charges were barred by the statute of limitations. Because we disagree, we affirm each of appellant's convictions.

Because appellant does not challenge the sufficiency of the evidence supporting his convictions, it is only necessary to recite

those facts relating to his argument that the statute of limitations barred his prosecution for theft of property. Appellant is an attorney who was charged with theft of property in excess of $2500 from the estates of Thomas and Tonya Zander between April 6, 1998 and January 18, 2001, and from United Healthcare of Arkansas between November 20, 1998, and January 31, 2002.

Both charges in this case stem from an automobile accident that occurred on June 30, 1997. Count I relates to money stolen from the estates of Thomas Zander and his minor daughter, Tonya, who were killed in the accident, and who each died intestate. Appellant referred the Zander family to another firm to handle Thomas's estate.[1] Although Tracy Zander, Thomas's son, testified that he never discussed hiring appellant to open an estate for Tonya, appellant filed a petition in probate court requesting that Tracy be appointed as administrator of Tonya's estate. The appointment was subsequently made. No request to make expenditures or disbursements from Tonya's estate was filed with the probate court; thus, the court filed no orders authorizing any expenditures or disbursements from the estate.

On December 15, 1997, appellant opened a bank account in the name of Tonya's estate at the Malvern National Bank; the authorized signatories were appellant and Tracy Zander. Appellant subsequently negotiated a $50,000 settlement on Tonya's behalf with State Farm Insurance Company agent Steve Medlock. Mr. Medlock issued the settlement check, dated April 3, 1998, and payable to Tonya's estate; he sent the check and a release form to appellant. The release form was returned to Medlock purportedly signed by Tracy and witnessed by appellant. The check was negotiated, but bore only appellant's name as "attorney for the estate of Tonya Zander." Tracy testified that the release appeared to bear his signature, but that he did not remember signing the release, and that he never saw the $50,000 check.

The bank records regarding Tonya's account showed several deposits, including an initial deposit of $958.31; a deposit for $50,000 credited on April 6, 1998; and a deposit for $795 credited on July 1, 1998. Appellant does not dispute that he made three withdrawals from this account by check and that each check was

---

[1] The other firm pursued a wrongful-death suit in Thomas's name but the litigation was ultimately dismissed; neither the other firm nor the representative of Thomas's estate received any money on behalf of the estate.

signed by him and made payable to him. The first withdrawal was made on April 6, 1998, in the amount of $20,516.41. The second withdrawal was made on February 23, 2000, for $30,000. The final withdrawal was made on January 18, 2001, for $700.

Count II relates to settlement proceeds that appellant stole from United Healthcare of Arkansas. United Healthcare is a medical services provider who was to benefit from a settlement that appellant negotiated for Megan Ungerer, a minor who was injured in the same accident that killed the Zanders. Megan's mother, Charann Cooley, retained appellant to represent them in a personal-injury action. Appellant ultimately negotiated a settlement, again with Mr. Medlock, on Megan's behalf for $300,000. Megan was to receive $198,000, less medical expenses; appellant was to receive $99,000 as his fee. The trial court approved the settlement and ordered that the money was to be placed in a locked account so that no withdrawals, expenditures, or disbursements could be made without permission of the court. However, appellant disobeyed the trial court's order by placing the settlement proceeds into his client trust (IOLTA) account instead of a locked account. The bank records for appellant's IOLTA account show that between November 1998 and May 2002, appellant wrote a number of checks on this account ranging in amount from $5000 to $50,000. Again, appellant does not dispute that he wrote these checks and obtained the money from this account as alleged by the State. Despite requests made on her behalf, Megan has not received any of the money from the settlement, nor has United Healthcare been paid for the medical services it provided to Megan.

In response to these charges, appellant filed a motion to dismiss, arguing that the conduct was not a continuing course of conduct and that charges were barred by the statute of limitations. The trial court denied the motion with regard to each charge on the basis that the issues of whether and when the thefts occurred were issues of fact. A jury subsequently found appellant guilty of two counts of theft in excess of $2500, each Class B felonies. He was sentenced to serve a total of twenty years in prison (ten years for each conviction). This appeal followed.

### I. Motion to Dismiss — Estate of Tonya Zander

Count I of the amended information, filed on October 28, 2002, charged appellant with taking monies in excess of $2500 from the estate of Tonya and Thomas Zander between April 6,

1998, and January 18, 2001.[2] Appellant maintains that the offense was not a continuing offense and that the amended information, filed on October 28, 2002, was not filed within the three-year statute of limitations for a Class B felony because the statute of limitations for any alleged theft against the Tonya Zander estate began on April 3, 1998.

A person commits theft of property if he or she knowingly takes or exercises unauthorized control over, or makes an unauthorized transfer of an interest in, the property of another person, with the purpose of depriving the owner thereof. Ark. Code Ann. § 5-36-103(a)(1) (Supp. 2005). Theft of property is a Class B felony if the value of the property is $2500 or more. Ark. Code Ann. § 5-36-103(b)(1)(A). Prosecution for a Class B felony must commence within three years after its commission. Ark. Code Ann. § 5-1-109(b)(2) (Supp. 2005).[3] An offense is committed either when every element occurs or, if a legislative purpose to prohibit a continuing course of conduct plainly appears, at the time the course of conduct or the defendant's complicity therein is terminated. Ark. Code Ann. § 5-1-109(e)(1). A continuing offense is a continuous unlawful act or series of acts set on foot by single impulse and operated by unintermittent force, however long a time it may occupy; an offense which continues day by day, a breach of criminal law that is not terminated by single act or fact, but subsisting for definite period and intended to cover or apply to successive similar obligations or occurrences. *Britt v. State*, 261 Ark. 488, 549 S.W.2d 84 (1977).

■ It is within the trial court's discretion to grant a motion to dismiss the prosecution of a charge. *Biggers v. State*, 317 Ark.

---

[2] It appears that the only evidence offered to support that appellant stole money from the estate of Thomas Zander was Exhibit 11, a copy of a check in the amount of $960.31 payable to Tracy Zander and appellant, which was endorsed by appellant as purported reimbursement for Thomas's cremation and urn.

[3] Nonetheless, if the limitations period under § 5-1-109(b)(2) has expired, prosecution may be brought within one year after the offense is discovered or should have reasonably been discovered if the offense involved either fraud or breach of a fiduciary obligation. Ark. Code Ann. § 5-1-109(c)(1). The trial court in this case found that a fiduciary relationship existed between appellant and his victims. Appellant argues alternatively that § 5-1-109(c)(1) does not save the charges because the thefts should have been discovered more than one year before the charges were filed. However, because we hold that the charges in this case were not barred by the three-year statute of limitations under § 5-1-109(b)(2), we do not address this argument.

414, 878 S.W.2d 717 (1994). We hold that the trial court did not abuse its discretion in denying appellant's motion to dismiss with regard to the money taken from Tonya's estate. Appellant asserts that the statute of limitations began to run on April 3, 1998, the date he endorsed the $50,000 settlement check. However, appellant's argument inexplicably ignores the fact that he deposited the settlement proceeds *after* that date and made three withdrawals from those proceeds *after* that date in the respective amounts of: $20,516.41 (April 6, 1998); $30,000 (February 23, 2000); and $700 (January 18, 2001). According to appellant's theory, these unauthorized withdrawals from this account after April 3, 1998, have no legal effect whatsoever — they are neither part of a continuing course of conduct nor does each act, individually, support a theft charge. His argument is tenuous, if not disingenuous, and is not supported by any argument or authority.

Our courts have determined that theft by receiving and theft of public benefits are continuing offenses. *See State v. Reeves*, 264 Ark. 622, 574 S.W.2d 647 (1978) (regarding theft by receiving); *Scott v. State*, 69 Ark. App. 121, 10 S.W.3d 476 (2000) (regarding theft of public benefits). However, our research revealed no case law supporting that theft of property pursuant to § 5-36-103 is a continuing offense. Nonetheless, we need not determine whether theft of property under § 5-36-103 is a continuing offense in order to affirm appellant's convictions.

With regard to Count I, as the State argues, the theft was committed either by a continuing course of conduct that began on April 6, 1998, (when appellant deposited the settlement proceeds into the account) and terminated on January 18, 2001, (when he made the last withdrawal from the account) or was committed by the single $30,000 withdrawal made on February 23, 2000. Under either set of facts, it is undisputed that appellant took at least $2500 from Tonya's estate within the three-year period prior to October 28, 2002. Accordingly, the trial court did not err in denying appellant's motion to dismiss the charge under Count I because it was brought within the requisite time period.

## II. *Motion to Dismiss* — *United Healthcare*

Count II of the amended information alleged that between November 20, 1998, and January 31, 2002, appellant stole money in excess of $2500 from United Healthcare. While appellant argued under Count I that the theft occurred when he signed the

settlement check, he inconsistently, and without explanation, argues that the theft occurred under Count II when he placed the money into his IOLTA account, on November 19, 1998, rather than when he signed Megan's settlement check. Pursuant to his theory, the three-year statute of limitations would have expired in November 2001, nearly one year before the amended information was filed in this case.

■■■ Appellant's argument is absurd on its face. Appellant is simply wrong in arguing that the date the settlement proceeds were deposited triggered the statute of limitations and he, again, disingenuously ignores the legal effects of the subsequent transactions.[4] The trial court directed appellant to deposit the settlement into a locked account from which no disbursements were to be made without court approval. No such court approval for the disbursement of funds was ever granted. Aside from directly disobeying the court's order by depositing the settlement proceeds in his IOLTA account instead of a locked account, appellant undisputedly made numerous unauthorized withdrawals for funds attributable to the settlement after November 19, 1998, and each such withdrawal exceeded the $2500 minimum necessary to support the theft charge. The amended information, filed on October 28, 2002, was filed within three years of even the earliest such unauthorized withdrawal ($15,000 on November 29, 1999); therefore, the charge under Count II was timely filed.[5]

Affirmed.

CRABTREE, J., agrees.

PITTMAN, C.J., concurs.

---

[4] The State notes that, even allowing for appellant's $99,000 fee and the $37,575.17 that was in appellant's IOLTA account prior to the settlement deposit, $4,424.83 of the settlement proceeds were unlawfully transferred as of the end of 1999.

[5] In fact, it appears that appellant's counsel conceded this point during the pre-trial hearing on appellant's motion to dismiss. When asked by the trial court whether he thought the statute-of-limitations argument would be "valid" if the thefts continued through January 2002, he responded, "Your Honor; no, I don't."