Robert Junior SMITH *v.* STATE of Arkansas

CR 90-8                                                    798 S.W.2d 94

Supreme Court of Arkansas
Opinion delivered November 5, 1990

*Pope & Limmerman*, by: *Sam Pope*, for appellant.

*Steve Clark*, Att'y Gen., by: *Ann Purvis*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. Appellant Robert Junior Smith was convicted of first degree murder for the slaying of sixteen-year-old Evon ("Boo") Benton. On appeal Smith contends he was

denied a speedy trial and the trial court erred on several evidentiary rulings. None of the points warrant reversal.

Appellant first argues the trial court erred by denying his motion to dismiss for a speedy trial violation. Appellant was arrested on April 5, 1988, and under A.R.Cr.P. Rule 28.1, should have been tried within twelve months, "excluding only such periods of necessary delay as are authorized in Rule 28.3." Appellant was not tried until June 6, 1989, some sixty-two days beyond twelve months, so unless there were excludable periods appellant was not tried within the time constraints of Rule 28.3.

The trial court found one excludable period of thirty-five days attributable to the pregnancy of the wife of appellant's attorney. Appellant does not contest this period but does contest a second period, from November 1, 1988, to November 30, 1988, which the trial court also excluded. On October 21, 1988, the trial court ordered a hearing for October 31 on a motion by the appellant to suppress evidence. Following that hearing the trial court took the motion under advisement, eventually denying it on December 29, 1988. Rule 28.3(a) permits the exclusion of time during which a pretrial motion is held under advisement, not exceeding thirty days, and on that basis the trial judge excluded thirty of the fifty-nine days the motion to suppress was under advisement.

Appellant points out that on the same date the trial court set the suppression hearing (October 21) it also granted a continuance at the request of the state to reschedule a November 1 trial date. The state's request was due to the crime lab not having completed certain tests. Appellant maintains that because the delay of the trial was attributable more to the state's motion than to his own, the thirty days his motion was under advisement should not be excluded under Rule 28.3(a). However, either was a sufficient basis for exclusion under the rule and we can find nothing in the record to sustain an inference that one was more influential than the other. Nothing in the rule expressly addresses this situation, but we note the language of the rule is mandatory: Rule 28.3 reads (before listing the excludable periods), "The following periods *shall* be excluded." [Our emphasis]. *See McBride* v. *State*, 297 Ark. 410, 762 S.W.2d 785 (1989) and *Nelson* v. *State*, 297 Ark. 58, 759 S.W.2d 215 (1988), where

exclusions were without regard to whether the trial date was directly affected.

We believe this result is in harmony with federal cases interpreting an almost identical provision of the federal speedy trial rule. In *United States* v. *Stafford*, 697 F.2d 1368 (11th Cir. 1983), the court pointed out that the language of the rule, like our own, is mandatory, adding this observation:

> Moreover, a contrary reading would present extremely difficult practical questions of whether a particular motion did or did not actually delay the commencement of a trial. The virtual impossibility of making such a determination and the resulting uncertainty for defendants as to their speedy trial status require the conclusion that Congress could not have intended the statute to be read as appellees suggest.

■ We conclude that the trial court did not clearly err by excluding the thirty days during which the defendant's motion to suppress was under advisement.

The appellant next argues that the trial court erred in admitting hearsay statements of a three-year-old child who witnessed the murder of Evon Benton. The victim was the teenage sister of Linda Benton, who lived with the appellant. On the afternoon of April 3, 1988, a Sunday, Evon came over to their house while neither Linda nor appellant was at home. Appellant came home about 5:00 p.m. and found Evon in the house. There was an argument and appellant struck Evon repeatedly with a hammer. The medical examiner testified Evon had been struck twenty-five times about the head. When appellant was sure she was dead he moved her body in his car and placed it in a nearby field.

On the afternoon of the murder, Evon was babysitting Tarri, the three-year-old son of another sister, Dorothy Benton. Tarri was in the house and apparently witnessed the murder of Evon. On Sunday night Tarri was returned to Dorothy's house by appellant. The next morning Dorothy asked Tarri where Evon was and Tarri told her that "Robert Smith hit Boo in the head with a hammer, hunch her, throw her in some weeds and took her to a doctor." Tarri repeated this to the police on two more

occasions on that same day. The police found the body shortly thereafter and arrested appellant.

A hearing was held on the admission of the statements made by Tarri. The trial court first found that Tarri was incompetent as a witness and then ruled that the statements would be admissible as hearsay under both the "excited utterance" exception, A.R.E. Rule 803(2) and, the "residual hearsay" exception, A.R.E. Rule 803(24). Appellant argues the trial court erred in this ruling and that the admission violated his confrontation right under the Sixth Amendment.

Tarri's hearsay statements were introduced at trial through the testimony of three witnesses. The first was his mother, Dorothy Benton, who testified that Tarri had made his statement to her first thing Monday morning after the murder. The second and third were the Eudora police chief, Lawrence Webster, and deputy sheriff Samuel Smith, Jr., who both testified that Tarri made the same statement to them, later that day. As we hold the statements were admissible under the excited utterance exception, we find it unnecessary to consider the residual hearsay exception.

■ In *Idaho* v. *Wright*, ___ U.S. ___, 110 S. Ct. 3139, 111 L.Ed.2d 638 (1990), the United States Supreme Court discussed the requirements of the Confrontation Clause with respect to hearsay in a criminal trial:

> Although we have recognized that hearsay rules and the Confrontation Clause are generally designed to protect similar values, we have also been careful not to equate the Confrontation Clause's prohibitions with the general rule prohibiting the admission of hearsay statements. The Confrontation Clause, in other words, bars the admission of some evidence that would otherwise be admissible under an exception to the hearsay rule.

> In *Ohio* v. *Roberts*, we set forth a general approach for determining when incriminating statements admissible under an exception to the hearsay rule also meet the requirements of the Confrontation Clause. We noted that the Confrontation Clause operates in two separate ways to restrict the range of admissible hearsay. First, in conform-

ance with the Framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case, the prosecution must either produce or demonstrate the unavailability of the declarant whose statement it wishes to use against the defendant. Second, once a witness is shown to be unavailable, his statement is admissible only if it bears adequate 'indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. [Citations omitted.]

The first factor — a showing by the state that the child witness was unavailable at trial — was met in the finding of the trial court that the child witness, being two and one-half years old, was incapable of communicating with the jury, and, hence, tantamount to being unavailable. *See Wright* at 3147. ("For purposes of deciding this case, we assume without deciding that, to the extent the unavailability requirement applies in this case, the younger daughter was an unavailable witness within the meaning of the Confrontation Clause.").

The second requirement, "indicia of reliability," derives from the "firmly rooted hearsay exception," i.e., the "excited utterance." *See Wright, supra*, which specifically refers to the excited utterance as an example of such an exception:

The basis for the 'excited utterance' exception, for example, is that such statements are given under circumstances that eliminate the possibility of fabrication, coaching or confabulation, and that therefore, the circumstances surrounding the making of the statement provide sufficient assurance that the statement is trustworthy and that cross-examination would be superfluous.

Appellant contends that Tarri's statements would not fall within this exception because of the lapse of time between the occurrence and the statement. We disagree. We first note the basic requirements of the excited utterance exception:

First there must be an occasion which excites the declarant. Second, the Statement must be uttered during the period of excitement and must express the declarant's reaction to the occasion. In practice, these tend to merge

together. If there was a sudden event which startled the declarant, his ensuing utterance will be assumed to be his reaction to the stimulus; if the statement appears to be excited, it will be assumed that the occasion was exciting.

4 D. Louisell, *Federal Evidence* § 439 (1980).

█ The interval between a statement and an event is governed by the particular circumstances of each case. D. Binder, *Hearsay Handbook* § 2.03 (1983). "The general rule is that an utterance following an exciting event must be made soon enough thereafter that it can reasonably be considered a product of the stress of the excitement, rather than of intervening reflection or deliberation." *Id.* "The trend is toward expansion of the time interval after an exciting event and some courts are more liberal in expanding the time period following an exciting event when the declarant is a child." *Id.*

Continuing emotional or physical shock and loss of consciousness, unabated fright, isolation and other factors may also prolong the time, "making it proper to resort to Rule 803(2), despite long lapses of time." D. Louisell, *supra.* It is further noted in Louisell on this point, that "sound decisions have found [long lapses of time, on the order of ten hours or more] insignificant" when the statements come from victims of brutal or terrifying crimes, "particularly when the victims are of tender years."

So in *People in Interest of O.E.P.*, 654 P.2d 312 (Colo. 1982), the court admitted the assertions of sexual abuse made by a three-year-old girl to a social worker, several days after the event, and stated:

Although the temporal interval between the 'startling event' and the child's statement is not without significance, it is not conclusive of the question of admissibility. The element of trustworthiness underscoring the excited utterance exception, particularly in the case of young children, finds its source primarily in the 'lack of capacity to fabricate rather than the lack of time to fabricate.' Citing to Fed. R. Evid. 803(2) Advisory Committee Note.

*See also Love* v. *State*, 64 Wis.2d 432, 219 N.W.2d 294 (1974) (approving admission of assertion of sexual abuse made by three-year-old girl to mother the morning after the event); *State* v.

*Padilla*, 329 N.W.2d 263 (Wis. App. 1982) (sexual abuse relayed by ten-year-old girl three days after the incident); *State* v. *Wallace*, 37 Ohio St.3d 87, 524 N.E.2d 466 (1988) (five-year-old victim made statements to a social worker, fifteen hours after an attempted murder on her life, child had been unconscious during that time with intermittent periods of consciousness); *State* v. *Novle*, 342 So.2d 170 (La. 1977) (admitting four-year-old's assertion to grandmother two days after rape); *Morgan* v. *Foretich*, 846 F.2d 941 (4th Cir. 1988) ("the time lapse to be considered . . . is not simply the time between the abuse and the declaration," . . . the courts "must also be cognizant of the child's first real opportunity to report the incident," with the court noting that "tender years greatly reduce the likelihood that reflection and fabrication were involved"); *Newbury* v. *State*, 695 P.2d 531 (Okla. Cr. 1985) (statement of four-year-old to her mother upon waking in the morning, that her babysitter, the murder victim, had left the previous evening with "the television man" was admitted, and finding that similar statements made later that day were merely cumulative).

These considerations are summarized in *United States* v. *Iron Shell*, 633 F.2d 77 (8th Cir. 1980):

> The lapse of time between the startling event and the out-of-court statement although relevant is not dispositive in the application of 803(2). Nor is it controlling that the [declarant's] statement was made in response to an inquiry. Rather, these are factors which the trial court must weigh in determining whether the offered testimony is within the 803(2) exception. Other factors to consider include the age of the declarant, the physical and mental condition of the declarant, the characteristics of the event and the subject matter of the statements. In order to find that 803(2) applies, it must appear that the declarant's condition at the time was such that the statement was spontaneous, excited or impulsive, rather than the product of reflection and deliberation. [Citations omitted.]

In this case, the three-year-old declarant witnessed the brutal murder of his aunt. He was returned to his home by the person who had committed the murder, about three hours later, when his mother was not yet at home. The evidence was that he

slept fitfully and cried and screamed during the night. The first time he fully awoke, he spoke to his mother and made the statement in question. She stated that he was crying and frightened when he told her what had happened.

Considering the factors discussed in *United States* v. *Iron Shell, supra*, in light of the above facts, we are persuaded the trial court did not err in ruling that the child's statement to his mother was admissible as an excited utterance under 803(2). The same is true of the statement repeated later to the police. *See Newbury* v. *State, supra.*

■ Appellant raises three other points. The first relates to the suppression motion made by appellant to exclude testimony that compared appellant's tire tracks with an impression of tire tracks discovered where the victim was found on the basis that appellant's car had been illegally seized and searched while parked at the Eudora police department during appellant's incarceration there. The second relates to appellant's request to exclude the same testimony on the basis that the individual making the comparison had not qualified as an expert. However, in light of appellant's testimony, it is not necessary to consider these two points. Appellant testified at trial that he killed the victim with a hammer, put her in his car and attempted to hide the body. When the evidence of guilt is overwhelming, an error of even constitutional proportions may be found to be harmless beyond a reasonable doubt. *Thomas* v. *State*, 289 Ark. 72, 709 S.W.2d 83 (1986).

■ As his last point, appellant contends the trial court erred in admitting two photographs of the victim's head, both of which were taken by the medical examiner and introduced with his report and testimony. Appellant first insists the state violated a rule of discovery, A.R.Cr.P. Rule 17.1, by failing to notify the defense of these two photos. At trial the state responded that while it had notified the defense of all other photos, the state itself was not aware of these photos until that morning. The trial court then held a brief recess and allowed the defense to view the pictures and question the medical examiner about them. While at the close of this recess, appellant again mentioned the failure of the state's discovery on this point, there was no request for further time to examine the pictures, or for a continuance. Nor was there

any claim to the trial court below, nor is there now to this court on appeal, as to how appellant was prejudiced by the failure to disclose the photos at an earlier time. Absent a showing of prejudice, we will not reverse. *Sutherland* v. *State*, 292 Ark. 103, 727 S.W.2d 496 (1987).

Appellant also contends the probative value of the pictures was substantially outweighed by the danger of unfair prejudice. Appellant argues that the pictures include some postmortem changes so that not only are the photos unduly gruesome, but also they don't accurately portray the wounds of the victim. Appellant contends the state could have introduced an anatomical drawing to accomplish the same purpose of portraying the location and nature of the wounds.

As to the accuracy of the photos, the trial court questioned the medical examiner on this point in chambers, and the examiner stated that while there was some change, it was nevertheless, a "pretty good, accurate demonstration" of the condition of the wounds. As to their probative value, the photos would certainly have assisted the jury to understand just how the murder occurred, and had bearing on the two alternative mental states the prosecution was trying to prove — premeditation and deliberation and circumstances manifesting an extreme indifference to the value of human life.

Even inflammatory photographs are admissible if they tend to shed light on an issue or enable the jury to understand the testimony. *Gardner* v. *State*, 296 Ark. 41, 754 S.W.2d 518 (1988). As we stated in *Richmond* v. *State*, 302 Ark. 498, 791 S.W.2d 691 (1990), "Unfortunately, a gruesome and heinous crime such as this one results in grotesque photographs." The final decision is one that is within the sound discretion of the trial court, *Gardner* v. *State, supra*, and we cannot say, after viewing the pictures in question, that there was any abuse of discretion in this case.

Under Ark. Code Ann. § 16-91-113 (1987), as put into effect by our Rule 11(f), we consider all objections brought to our attention in the abstracts and briefs in appeals from a sentence of life imprisonment or death. In this case we find no prejudicial error in the points argued or in the other objections abstracted for

review.

Affirmed.