2009 Ark. 110

**Doyle Dewayne FRYE, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CR 08–635.**

Supreme Court of Arkansas.

March 5, 2009.

**12**

Knutson Law Firm, by: Gregg A. Knutson, Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., by: Valerie Glover Fortner, Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice.

Appellant, Doyle Dewayne Frye, appeals the judgment of the Benton County Circuit Court convicting him of the rape of A.C., his then-nine-year-old niece, and sentencing him as a habitual offender to life imprisonment. Our jurisdiction is pursuant to Ark. Sup.Ct. R. 1–2(a)(2). For reversal of the judgment, Appellant alleges the trial court erred in making three evidentiary rulings. We find no merit to the

arguments and affirm the judgment of conviction, which was entered pursuant to a jury verdict.

Appellant does not challenge the sufficiency of the evidence; therefore, only a brief recitation of the facts and evidence is necessary. The State alleged that Appellant raped his niece by penetrating her vagina digitally and orally during the late night of August 1 or the early morning of August 2, 2006. A jury heard testimony from multiple witnesses including the victim, other family members, and law enforcement officials about the events and circumstances occurring before, during, and after the rape. We relate the evidence in detail only as required to understand Appellant's three assignments of error.

As his first point for reversal, Appellant alleges the trial court erred in admitting the hearsay testimony of the child-victim's mother, Bobbie Jean Murchison, concerning statements the child made to her about the rape. The trial court allowed the testimony as an excited utterance, over Appellant's objection that the statement was made after a significant delay following the startling event and in the absence of testimony that the child was still under the effects of the event.

On appeal, Appellant points out that the testimony was about an event that occurred, by the mother's own admission, prior to 2:00 a.m. that morning. Appellant thus emphasizes there was a significant break in time between the alleged event in the early morning and the evening when the family had moved into a new apartment. Appellant further emphasizes that the child's statement was made in response to questioning from her mother, rather than a statement blurted out in response to the alleged stressful event. In sum, argues Appellant, the alleged incident and excitement had clearly ended that eve-

ning by the time the family had moved into their new apartment when the victim made the statement.

Appellee responds by pointing out that this court has followed the trend observed and discussed in *Smith v. State*, 303 Ark. 524, 798 S.W.2d 94 (1990), of allowing an expansion of the time interval between the startling event and the statement when the declarant is a child. Citing *Jackson v. State*, 290 Ark. 375, 720 S.W.2d 282 (1986), Appellee further responds that excited utterances may come as answers to questions, particularly from victimized children.

Arkansas Rule of Evidence 803(2) provides an exception to the hearsay rule for excited utterances, regardless of the availability of the declarant. For the exception to apply, there must be an event which startles or excites the declarant. *Rodriguez v. State*, 372 Ark. 335, 276 S.W.3d 208 (2008). In addition, it must appear that the declarant's condition at the time was such that the statement was spontaneous, excited or impulsive, rather than the product of reflection and deliberation. *Id.* The statements must be uttered during the period of excitement and must express the declarant's reaction to the event. *Id.* It is within the circuit court's discretion to determine whether the statement was made under the stress of excitement. *Id.*

This court has recognized there are several factors to consider when determining if a statement falls under the excited utterance exception in Rule 803(2): the lapse of time, the age of the declarant, the physical and mental condition of the declarant, the characteristics of the event, and the subject matter of the statement. *Smith*, 303 Ark. 524, 798 S.W.2d 94. When adopting these factors from the decision in *United States v. Iron Shell*, 633 F.2d 77 (8th Cir. 1980), this court observed that the lapse of time between the startling event and the

out-of-court statement, although relevant, is not dispositive. *Smith*, 303 Ark. 524, 798 S.W.2d 94. This court observed further in *Smith* the fact that the declarant's statement was made in response to an inquiry was likewise not controlling. *Id.; see Jackson*, 290 Ark. 375, 720 S.W.2d 282.

In this case, the evidence showed that the nine-year-old declarant was raped both digitally and orally by her uncle in the middle of the night, dismissed shortly thereafter by her sleeping mother when she was searching for another place to sleep, and then evicted along with her parents and siblings the following morning and forced to find a new place to live. It was while unpacking and settling in the new apartment that the child victim made the challenged statement about the abuse that occurred during the early morning hours. Her mother's husband observed something wrong with the child and asked her mother to check on her. After doing as her husband suggested, the mother checked on her daughter and stated the child was crying, upset, and not her normal self when she made the challenged statement that she was glad that Appellant "didn't come to live with us. . . . because he had been touching her and he licked her . . . and she didn't like the way that that felt. And he licked her all the way down and pulled her panties to the side."

This court has observed that sexual abuse is a startling event within the meaning of Rule 803(2). *Killcrease v. State*, 310 Ark. 392, 836 S.W.2d 380 (1992). Whether the statement was made under the stress of the excitement of the event rather than after intervening reflection and deliberation is a matter included within the trial court's discretion to admit or exclude evidence, and we will not reverse a trial court's decision regarding the admission of evidence absent a manifest abuse of discretion. *Rodriguez*, 372 Ark. 335, 276

S.W.3d 208. The fact that the declarant in this case is a young child and a victim of rape are certainly appropriate factors for the trial court to consider. Also appropriate to consider is the fact that the declarant was undergoing the continued stress of her family's eviction, finding a new place to live, and then moving. Under these circumstances, it is quite possible this was the child's first real opportunity to report the startling event. *See Smith*, 303 Ark. 524, 798 S.W.2d 94 (citing *Morgan v. Foretich*, 846 F.2d 941 (4th Cir.1988)). Although it is not known the exact number of hours that had elapsed, the statement was made less than twenty-four hours following the startling event and in response to her mother's questions. As we stated in *Smith*, 303 Ark. 524, 798 S.W.2d 94, these factors are not controlling of the analysis, especially when considered in light of the other factors, such as the brutal criminal event, the young age of the victim, the upset demeanor of the victim, and the subject matter of the statement. For these reasons, we conclude Appellant's argument is without merit and the trial court did not abuse its discretion in ruling the challenged testimony admissible under the excited-utterance exception to the hearsay rule.

As his second argument for reversal, Appellant contends the trial court erred in allowing Investigator Richard Feast to give his opinion as to the truthfulness of Appellant's statements made during a custodial interview. Investigator Feast testified for the State about his arrest and subsequent interview of Appellant. On cross-examination, Investigator Feast stated that he informed Appellant of his *Miranda* rights, that Appellant was cooperative and strongly maintained his innocence from the very beginning, but that his body language indicated he had something to hide. Defense counsel continued asking questions about Appellant's demeanor during the interview, even going so far as to ask, "Are you an expert at body language?" Investigator Feast responded, "I've been to school on it, yes." After further questions from defense counsel about his training, the investigator clarified that he was not holding himself out as an expert on body language. On redirect examination, the prosecution inquired further into Investigator Feast's training in interview techniques. He explained that based on his training and on his experience of interviewing several hundred witnesses, he felt Appellant's body language indicated he was being deceptive.

At this point, Appellant's counsel objected as follows: "Judge, I believe at this point the State is trying to elicit testimony in the form of an expert opinion, and we feel that Investigator Feast had in no way been qualified as an expert." After the State responded that the defense had opened the door, Appellant's counsel stated, "Well, if he is going to testify as to a conclusion reached, we feel that that would be in the form of an expert opinion and that he would need to be specially qualified for that."

The trial court allowed the testimony to continue "to a certain extent," not as an expert but because the defense had initiated the line of questioning and therefore the State should be allowed to clarify as to why the investigator continued to ask repeated questions in the face of Appellant's consistent denials that he touched the victim inappropriately. Investigator Feast then testified that he continued to ask Appellant questions despite hearing denials, because "over a period of time sometimes they do come out and tell the truth and that's what I was searching for." The State inquired whether the investigator felt like what Appellant was saying was the truth. Investigator Feast replied,

"No." The testimony then approached a new subject, without any further objection by Appellant.

On appeal, Appellant contends that Investigator Feast's testimony was inadmissible as expert testimony under Ark. R. Evid. 702 because it would not aid the jury in understanding the evidence or in determining a fact in issue. Appellant contends the lay jurors were fully competent to determine whether Appellant was telling the truth. Therefore, citing *Buford v. State*, 368 Ark. 87, 243 S.W.3d 300 (2006), he argues, the challenged testimony invaded the province of the jury as it was not the type of testimony that is beyond the ability of the jury to understand and draw its own conclusions. We are precluded from reaching the merits of this argument, however, because this point is not preserved for appellate review.

This court has repeatedly held that arguments not raised at trial will not be addressed for the first time on appeal. *Buford*, 368 Ark. 87, 243 S.W.3d 300. Moreover, parties cannot change the grounds for an objection on appeal, but are bound by the scope and nature of their objections as presented at trial. *Id.* At trial, Appellant objected on the grounds that the State was attempting to elicit expert-opinion testimony from Investigator Feast without first qualifying him as an expert. Appellant did not object below, as he now argues on appeal, to the investigator's testimony as it related to Appellant's truthfulness. The scope and nature of Appellant's objection at trial went solely to the witness's qualifications or lack thereof as an expert. Appellant cannot now argue for the first time on appeal that the investigator's testimony went to the matter of Appellant's truthfulness and invaded the province of the jury.

As his third and final assignment of error, Appellant points to the admission into evidence of his prior convictions in Florida for misdemeanor lewd battery with a child and felony driving under the influence with a suspended or revoked license. These convictions were admitted during the cross-examination of Appellant's wife, Janice Frye. The trial court ruled they were admissible because Appellant had opened the door to character evidence on direct examination.

The State responds that this issue is not preserved for review; however, it is clear from the record that two side-bar discussions were held where the issue of opening the door to character evidence was discussed. At both side-bars, Appellant argued that he had not opened the door for character evidence because he had not asked Mrs. Frye to comment on Appellant's good character; rather, he simply inquired about Appellant's opportunity to commit the abuse in the very narrow context of her ability to observe the events going on in the living room from her vantage point in the bedroom. Given these two side-bar discussions, we conclude Appellant's objections below were specific to preserve the issue of character evidence and prior convictions for our appellate review.

Alternatively, the State responds that the trial court was correct in ruling Appellant opened the door to character evidence. We agree that Appellant did indeed open the door for his prior convictions when his wife testified on direct that she had been married to Appellant for sixteen years, that over those sixteen years she had gotten to know Appellant very well, and that she did not believe that Appellant was guilty of these charges.

Under Ark. R. Evid. 404(a)(1), evidence of a person's character or a trait of his character is not admissible for proving that he acted in conformity therewith on a

particular occasion, except by the accused or by the prosecution to rebut the same. Thus, "[o]nce the admissibility of character evidence is established under Rule 404, Rule 405 establishes the methods of proof which may be utilized." *Smith v. State*, 316 Ark. 407, 411, 872 S.W.2d 843, 845 (1994). Rule 405(a) provides that once character evidence is admissible, one permissible method is reputation or opinion testimony, and further that "*[o]n cross-examination, inquiry is allowable into relevant specific instances of conduct.*" *Smith*, 316 Ark. at 411, 872 S.W.2d at 845 (quoting Ark. R. Evid. 405(a)).

Mrs. Frye stated that during her sixteen-year marriage to Appellant she had gotten to know Appellant pretty well and that she did not think Appellant was guilty of the crime charged. This testimony came out during the first five questions asked on direct examination. Despite Appellant's contention to the contrary, the only purpose these questions could have had at this point in Mrs. Frye's testimony was to show that Appellant was not a person who was disposed to commit the crime charged. Therefore, Mrs. Frye was a character witness according to Rule 404.

This court has recognized that when a defendant produces a character witness, the defendant opens the door to evidence that might otherwise be inadmissible. *Smith*, 316 Ark. 407, 872 S.W.2d 843. In *Smith*, this court stated:

Rule 405 clearly provides that in cross-examining a defendant's character witness, it is permissible to inquire into the witness' knowledge of specific instances of conduct. Such cross-examination tests the witness's knowledge of the defendant's reputation and that, in turn, may go to the weight to be given his opinion. Further, Rule 405 places no limit, other than relevancy, on the kind of instances of misconduct with respect to which cross-examination may occur.

*Id.* at 411–12, 872 S.W.2d at 845 (citations omitted). Thus, in *Smith*, this court upheld the admission of prior convictions when offered to rebut the defendant's opinion testimony. Accordingly, we conclude the circuit court did not err in ruling that Appellant had opened the door for the prior convictions through his wife's opinion testimony.

Pursuant to Ark. Sup.Ct. R. 4–3(h), the record in this case has been reviewed for all objections, motions, and requests made by either party, which were decided adversely to Appellant, and no prejudicial error has been found.

The judgment of conviction is affirmed.