2011 Ark. App. 686

**Kendall Maurice DAVIS, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 11–245.**

Court of Appeals of Arkansas.

Nov. 9, 2011.

Terry Goodwin Jones, Jonesboro, for appellant.

Dustin McDaniel, Atty. Gen., Kathryn Henry, Office of Atty. Gen., Little Rock, for appellee.

DOUG MARTIN, Judge.

Appellant Kendall Davis was charged by felony information with one count of rape by engaging in deviate sexual activity with another person who was less than fourteen years of age. Following his arrest, Davis gave a statement to police in which he admitted that his penis "made contact" with the mouth of his then five-year-old niece. The morning of his bench trial, Davis argued that his statement should be suppressed because, during the questioning by police, he requested an attorney. The circuit court denied his motion, finding that Davis never made a demand or a specific request to see a lawyer. The case was then tried to the court without a jury, and the court found Davis guilty of rape and sentenced him to twenty-five years in prison, with an additional ten years' suspended imposition of sentence.

Davis filed a timely notice of appeal, and he now raises three points for reversal: (1) the circuit court erred in denying his motion to suppress; (2) the evidence was insufficient to support his conviction; and (3) the circuit court abused its discretion in overruling his hearsay objection to the testimony of the victim's mother. We find no error and affirm.

Although Davis raises his sufficiency challenge as his second point on appeal, double-jeopardy considerations require us to address it first. *Percefull v. State,* 2011 Ark. App. 378, 383 S.W.3d 905. In reviewing a challenge to the sufficiency of the evidence, this court views the evidence in the light most favorable to the State and considers only the evidence that supports the verdict. *Id.* We will affirm a conviction if there is substantial evidence

to support it, and substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion without resort to speculation or conjecture. *Id.* A rape victim's uncorroborated testimony describing penetration may constitute substantial evidence to sustain a conviction of rape, even when the victim is a child. *Harlmo v. State,* 2011 Ark.App. 314, 383 S.W.3d 447; *Elliott v. State,* 2010 Ark.App. 809, 379 S.W.3d 101.

Davis was charged with rape under Arkansas Code Annotated section 5–14–103(a)(3)(A) (Repl.2006). This statute provides that a person commits rape if he or she engages in sexual intercourse or deviate sexual activity with another person who is less than fourteen years of age. Deviate sexual activity is defined as "any act of sexual gratification involving ... [t]he penetration, however slight, of the ... mouth of a person by the penis of another person." Ark.Code Ann. § 5–14–101(1)(A) (Repl.2006).

At trial, the State introduced the testimony of the victim, L.D., Davis's niece. L.D. was five years old at the time Davis was charged; she was six by the time of trial. L.D. testified that Davis regularly came to her home when she lived in Jonesboro, but he did not come over anymore because she did not like him. When asked why she did not like Davis, L.D. stated that he "put his pee-pee in [her] mouth." She explained that, while she was in the bathroom, Davis came in and pulled his pants down and kept her from leaving the bathroom. L.D. also said that Davis touched her "where I used the bathroom in the front."

L.D.'s mother, Cathy Davis, testified that these events occurred on October 31, 2009. Cathy stated that she and some other family members were standing around and visiting outside her trailer

when L.D. went inside to use the bathroom. Davis went inside shortly thereafter, and Cathy and the others went inside after that. Cathy stated that L.D. then came running down the hall, yelling.[1] Cathy said that L.D., who looked scared and frightened, stated that Davis had put his pee-pee in her mouth. Cathy's husband, Randy Davis (who is the appellant's brother) also testified that he saw L.D. come running down the hallway and that L.D. told him that Davis had put his pee-pee in her mouth.

In addition, the State introduced the videotaped statement that Davis gave to police following his arrest.[2] In his statement, Davis initially denied having done anything to L.D. Eventually, however, he said that he and L.D. were in the bathroom and he "had [his] penis out" and "ran it across her lips" so that it "made contact briefly on top." Davis denied putting his penis in L.D.'s mouth but claimed to have "raked the outer part of her lips." Later, however, he said that "she may have opened her mouth to breathe or something, but ... it was quick."

On appeal, Davis argues that there was no evidence that he penetrated the mouth of the victim with his penis. He further contends that his confession was "not a true reflection of the events" and that the other witnesses were not credible. It is the function of the fact-finder, however, and not the reviewing court, to evaluate the credibility of the witnesses and to resolve any inconsistencies in the evidence. *Brown v. State*, 374 Ark. 341, 288 S.W.3d 226 (2008); *Elliott v. State*, 2010 Ark. App. 809, 379 S.W.3d 101. Here, the victim's testimony, coupled with the defendant's confession, constituted substantial evidence to support Davis's rape conviction.

Davis next argues that the circuit court erred when it refused to suppress the statements Davis made during his custodial interrogation. Specifically, Davis argues that, once he asked the investigating officer whether he needed an attorney, the questioning should have ceased.

When reviewing the denial of a motion to suppress evidence, this court conducts a de novo review based on the totality of the circumstances, reversing only if the circuit court's ruling is clearly against the preponderance of the evidence. *Sykes v. State*, 2009 Ark. 522, 357 S.W.3d 882; *Morgan v. State*, 2009 Ark. 257, 308 S.W.3d 147. A statement made while in custody is presumptively involuntary, and the burden is on the State to prove by a preponderance of the evidence that a custodial statement was given voluntarily. *Bell v. State*, 371 Ark. 375, 266 S.W.3d 696 (2007).

A defendant may end questioning at any time by unequivocally invoking his right to remain silent. *Sykes, supra.* Our criminal rules provide that a police officer shall not question an arrested person if that person indicates "in any manner" that he does not wish to be questioned or that he wishes to consult counsel before submitting to any questioning. Ark. R.Crim. P. 4.5 (2009).

When invoking a *Miranda* right, however, the accused must be unambiguous and unequivocal. *Whitaker v. State*, 348 Ark. 90, 71 S.W.3d 567 (2002). Furthermore, if a suspect makes a reference to an attorney that is ambiguous or equivocal such that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking

---

1. Davis's hearsay objection to Cathy Davis's testimony is the subject of Point III of this appeal.

2. The videotape was the subject of Davis's suppression motion, and its introduction is discussed in Point II below.

the right to counsel, our precedents do not require cessation of questioning. *Sykes, supra; Higgins v. State,* 317 Ark. 555, 879 S.W.2d 424 (1994). An equivocal request for counsel does not obligate the police to cease questioning and seek clarification, and interrogation may continue until the suspect clearly requests counsel. *Holsombach v. State,* 368 Ark. 415, 246 S.W.3d 871 (2007); *Moore v. State,* 321 Ark. 249, 903 S.W.2d 154 (1995).

Davis was questioned about his crime by Officer Jeremy Parnell of the Jonesboro Police Department. Prior to the interrogation, Davis signed a "Statement of Rights" form, waived his rights, and averred that he was willing to make a statement and did not want a lawyer at that time. At the outset of the questioning, Officer Parnell had Davis verbally agree that he understood his rights and still agreed to give a statement. As mentioned above, Davis initially denied any wrongdoing. As the interview progressed, however, Davis began questioning the officer about how it would look if he changed his story and said that he felt it would make him "look guilty as hell" if he did so. Parnell said that he could not make any promises or vouch for what the prosecuting attorney would do, but he did comment that he would let the judge know that Davis cooperated. Davis then asked what the possible range of punishment was, and Parnell replied that it was ten to forty years' imprisonment.

At that point, Davis asked, "How soon can I talk to a lawyer?" Officer Parnell replied,

> I mean, it would be—be as soon as— as soon as you get one. I mean, like, I said ... if you want to talk to one—if you want to stop right now we can stop it now and if you bond out you can get one then, or the judge will—like I said, you'll be coming back here Monday whether you bond out ... or not; if you

bond out, you're still going to come back here Monday and we'll go over the paperwork and it will either be you'll get a public defender or you'll hire your own attorney, and you'll talk to them once everything gets over there.

Davis then said, "But how ... would it make me look, though, if I just told you all of that stuff before then [and] all of a sudden changed my statement?" The conversation proceeded from there, and Davis never repeated his question or specifically requested an attorney. Moreover, during the suppression hearing, Davis testified that he did not feel that he needed an attorney present when he gave his statement.

The circuit court denied Davis's motion to suppress his statement, finding that Davis never made a demand or a specific request to see a lawyer "at that time." The court also found it

> very significant that after [Davis] asked that question of the officer and after the officer responded with those options of how an attorney would be obtained, [Davis] did not miss a beat and immediately started resuming his questioning of the officer of how it would make him look if he changed his story.

The court stated that it did not hear Davis say that he wanted an attorney to be with him.

The appellate courts have found that statements such as "You'll furnish me a public defender," *Holsombach,* 368 Ark. at 421, 246 S.W.3d at 876; "Do I need to call an attorney," *Flanagan v. State,* 368 Ark. 143, 160, 243 S.W.3d 866, 878 (2006); and "Do you think I need an attorney," *Higgins v. State,* 317 Ark. 555, 560, 879 S.W.2d 424, 427 (1994), were not unequivocal requests for counsel. Similarly, in *Baker v. State,* 363 Ark. 339, 214 S.W.3d 239 (2005), the statement "I don't feel like I can talk with you without an attorney sitting right

here to give—have them here to give me some legal advice" was held to be an ambiguous reference to an attorney, after which the defendant continued with the interview; on those facts, our supreme court affirmed the trial court's denial of Baker's motion to suppress his statement. *Id.* at 345, 214 S.W.3d at 243.

Here, Davis's question—"How soon can I talk to an attorney?"—was not an unambiguous and unequivocal request for an attorney. Moreover, after Davis made that statement, Officer Parnell informed Davis of the process by which he could obtain an attorney's services, and Davis thereafter continued to talk to Officer Parnell without further referencing his desire for an attorney. Davis's comments at the beginning of his recorded statement also make clear that he was aware of his *Miranda* rights and deliberately waived those rights. A reasonable officer in the situation would not have understood that, by saying "How soon can I talk to an attorney?" Davis was clearly and unequivocally invoking his right to counsel. In short, viewing the totality of the circumstances, we conclude that the circuit court did not err in denying Davis's motion to suppress.

In his final point on appeal, Davis argues that the circuit court erred when it allowed Cathy Davis to testify that L.D. told her that Davis had "put his pee-pee in her mouth." The circuit court allowed the testimony over Davis's hearsay objection, finding that the child's statement qualified as an excited utterance. On appeal, Davis argues that Cathy's testimony—i.e., that L.D. came to her and made the statement within seconds after the event occurred— was in conflict with that of Randy Davis, who said it took longer for the child to come into the room; therefore, Davis maintains, the conflict in the testimony should have rendered the statement inadmissible.

Arkansas Rule of Evidence 803(2) provides an exception to the hearsay rule for excited utterances, regardless of the availability of the declarant. For the exception to apply, there must be an event which startles or excites the declarant. *Frye v. State,* 2009 Ark. 110, 313 S.W.3d 10; *Rodriguez v. State,* 372 Ark. 335, 276 S.W.3d 208 (2008). In addition, it must appear that the declarant's condition at the time was such that the statement was spontaneous, excited or impulsive, rather than the product of reflection and deliberation. *Frye, supra.* The statements must be uttered during the period of excitement and must express the declarant's reaction to the event. *Id.* It is within the circuit court's discretion to determine whether the statement was made under the stress of excitement. *Id.*

Our supreme court has recognized that there are several factors to consider when determining if a statement falls under the excited utterance exception in Rule 803(2): the lapse of time, the age of the declarant, the physical and mental condition of the declarant, the characteristics of the event, and the subject matter of the statement. *Smith v. State,* 303 Ark. 524, 798 S.W.2d 94 (1990) (adopting the factors from the decision in *United States v. Iron Shell,* 633 F.2d 77 (8th Cir.1980)). In setting out these factors, the supreme court observed that the lapse of time between the startling event and the out-of-court statement, although relevant, is not dispositive. *Smith,* 303 Ark. 524, 798 S.W.2d 94.

In *Frye, supra,* the trial court admitted the testimony of the nine-year-old rape victim's mother that her daughter told her about the abuse the day after it occurred. In that case, the supreme court acknowledged that sexual abuse is a startling event within the meaning of Rule 803(2). *Frye,* 2009 Ark. 110, at 4, 313 S.W.3d at 13. The court also stated that whether the statement was made under the stress of

the excitement of the event rather than after intervening reflection and deliberation is a matter included within the trial court's discretion to admit or exclude evidence, and the appellate courts will not reverse a trial court's decision regarding the admission of evidence absent a manifest abuse of discretion. *Id.* (citing *Rodriguez v. State, supra* ).

In permitting the testimony under the excited-utterance exception to the hearsay rule, the circuit court considered Cathy Davis's testimony that L.D. had a scared expression on her face; further, the court noted that it appeared that the statement was made "almost immediately following the child's encounter with Mr. Davis." Although Davis argues on appeal that there was a conflict in the testimony regarding the lapse in time between the abuse and the child's statement, any conflict between Cathy Davis's statement that it was mere "seconds" and Randy Davis's claim that "minutes" elapsed was a matter of credibility for the trial court to settle. *See Washington v. State,* 2011 Ark. 372, 2011 WL 4396989 (noting that any conflicts in the testimony are for the circuit court to resolve, as it is in a superior position to determine the credibility of the witnesses). Moreover, even if "minutes" had elapsed, as Randy Davis testified, the trial court nonetheless did not abuse its discretion in finding that L.D.'s statement was made "under the excitement of the event rather than after intervening reflection and deliberation." *Frye,* 2009 Ark. 110, at 4, 313 S.W.3d at 13. Accordingly, Davis's argument is without merit.

Affirmed.

VAUGHT, C.J., and GLADWIN, J., agree.