SLIP OPINION

Cite as 2017 Ark. 155

# SUPREME COURT OF ARKANSAS

No. CR–16–809

| | | |
|---|---|---|
| MARVIN A. STANTON | | Opinion Delivered: April 27, 2017 |
| | APPELLANT | APPEAL FROM THE MILLER COUNTY CIRCUIT COURT |
| V. | | [NO. 46CR–15–503] |
| STATE OF ARKANSAS | | HONORABLE KIRK JOHNSON, JUDGE |
| | APPELLEE | |
| | | REVERSED AND REMANDED. |

**JOSEPHINE LINKER HART, Associate Justice**

A jury found appellant, Marvin A. Stanton, guilty of first-degree murder, for which he received a sentence of life imprisonment, and of employing a firearm as a means of committing the murder, for which he received a sentence of fifteen years, with the sentences to run consecutively. On appeal, he contends that the circuit court erred by allowing the State to introduce character evidence to show that he acted in conformity with his character when he committed the crimes. We reverse Stanton's convictions and remand for a new trial.[1]

On September 25, 2015, Stanton and the victim, Jesse Hamilton, confronted each other at a Raceway gas station in Texarkana, Arkansas. While the testimony of the State's

---

[1] Further, Stanton contends that, although he did not object and there was no ruling against him, the circuit court, sua sponte, should have precluded the State from making statements during closing argument that Stanton contends constituted improper vouching for the credibility of the State's witness. We need not address Stanton's argument because the issue is not likely to occur on retrial.

witnesses differed significantly from Stanton's testimony regarding the circumstances, the parties agree that the confrontation escalated into a fight that ended when Stanton shot Hamilton with a handgun, causing his death.

Before trial, Stanton moved to suppress any evidence regarding a 2007 incident that resulted in Stanton's arrest for aggravated assault. At a pretrial hearing, Eric Green, a patrol sergeant with the Hope Police Department, testified that in 2007 he investigated an alleged aggravated assault by Stanton. Green testified that there was a disagreement between Stanton and another person involving an unpaid bill. The other person followed Stanton to his home, and Stanton exited his vehicle with his firearm. Stanton denied making any threatening gestures or pointing the weapon at the person. Green testified that, based on his investigation, he concluded that there was no evidence that Stanton had committed a crime, and the charge was dropped. After the hearing, the circuit court issued a letter opinion in which it concluded that the evidence was inadmissible. Citing Rule 404(b) of the Arkansas Rules of Evidence, the court ruled that evidence of the use of a gun eight years earlier "did not meet any of the criteria for admission."

At trial, Stanton took the stand in his own defense and asserted that he was justified in using deadly physical force against Hamilton. Before testifying about the circumstances surrounding Hamilton's death, however, Stanton testified about his personal history. He testified that he was born in Shaw, Mississippi, and graduated from high school in Cleveland, Mississippi. He testified that in 1985, when he was 18 years old, he joined the United States Marine Corps. He testified he was deployed during both Desert Shield and Desert Storm, was on active duty for eight years, and after he left active duty in 1991, was on inactive



status for three and one-half years. He further testified that he would turn 50 years old in June 2016, that he is married to a pediatrician, and that he is the father of six and the grandfather of four. Stanton testified about his involvement in his wife's medical practice. He further testified that he is an EMT, performs volunteer work for a volunteer fire department, and runs a nonprofit, "Hope From Hope," where they teach basic life support to nurses and EMTs for the American Heart Association. He also testified that he is licensed to carry a concealed handgun, is a concealed-carry-permit instructor, and is a "safety officer" for the National Rifle Association. He further testified that he is a member of the Rotary Club in Hope, Arkansas, and had been a member of the Juggernauts of Hope, a motorcycle club, but is now a member of the Juggernauts of Texarkana. He testified that he had left the Juggernauts of Hope because the national organization would not allow women in the organization to have the same status as men. He testified that he rejoined the Juggernauts, however, because he enjoyed nonprofit work or service work, and that it "was my way of giving back because I didn't have much when I was coming up." He testified, "[T]hat's kind of my way of giving all the years throughout my entire career, which I provided that to my lawyer here about all the awards, accommodations, and stuff that I've kind of managed to obtain here throughout the years, and still hasn't stopped to this day." He testified that he was the public-relations officer for the Juggernauts and that he participated in Toys for Tots, an event where motorcyclists brought in toys with the goal of filling a five-ton truck with the toys. He also testified about participating in, and raising money for, events for the homeless, where the homeless were given packets of food and toiletries.

On cross-examination, the State asked Stanton whether he is a peaceful and law-abiding citizen. Stanton's counsel objected, asserting that Stanton had not testified regarding his peacefulness. The State advised the court that it intended to ask Stanton whether he had ever "pull[ed]" a gun on someone. The State also informed the court that it intended to ask Stanton whether he had ever hit anyone in the head. The court concluded that the State could "go forward now that [Stanton's] character has been placed into issue."

During the State's cross-examination, Stanton testified that eight years ago he had pulled a gun to stop a threat. He testified that a man had approached him at his office in a threatening manner, that he got in his vehicle and left his office, and that the man followed him to his home and tried to drive him off the road. Stanton testified that when he arrived home, he pulled his gun, and the man left. The State further asked Stanton if he had ever hit a woman in the head. Stanton testified that he had slapped a woman before, which bloodied her nose. He testified that he struck her because she had "herpes on the corner of her mouth" and had spit in his face.

On appeal, Stanton argues that the circuit court abused its discretion by allowing the State to cross-examine him on these two instances of prior misconduct. Stanton contends that the evidence submitted by the State was not admissible under Rule 404(b) of the Arkqnsas Rules of Evidence and was introduced solely to show that Stanton had a violent character, even though Stanton had not put his character for peacefulness at issue. Citing Rule 403 of the Arkansas Rules of Evidence, Stanton further contends the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. Also, Stanton asserts that his testimony regarding his background was relevant to facts in issue.

Specifically, he noted that (1) the testimony regarding him being a Marine was relevant because he and the victim had voiced their respective military backgrounds during the confrontation and was also relevant to show that he believed Hamilton had physically confronted him by stepping on his toes, which Stanton testified is a military technique used to throw a person off balance; (2) the testimony regarding his charity work explained why he is in a motorcycle club; (3) the testimony that he is an EMT explained why he rendered aid to Hamilton after the shooting; (4) the testimony regarding his background with carrying a weapon was relevant to explain why he was in possession of a handgun and to show that he knew how to handle the handgun.

In response, the State notes that prior to trial, the circuit court ruled that the evidence regarding Stanton's use of a handgun eight years earlier was inadmissible, and the State asserts that it complied with the ruling. The State, however, asserts that its compliance with the circuit court's pretrial ruling did not end the matter. The State concludes that "proof of bad character in the form of other crimes, wrongs, or acts, even when inadmissible under Rule 404(b), becomes admissible when a party opens the door by eliciting evidence of good character." The State contends that the evidence was admissible under Rule 404(a)(1) and Rule 405(a) of the Arkansas Rules of Evidence. The State asserts that because Stanton injected into the trial his character as a peaceful and law-abiding person, the State was entitled to rebut the evidence through cross-examination on relevant specific instances of Stanton's conduct.

In reply, Stanton asserts that he did not put his character or reputation for peacefulness at issue. He thus concludes that the State could not rebut the evidence by

questioning him about specific instances of his conduct relating to his peacefulness. He contends that his testimony was merely testimony about his background unrelated to his character for peacefulness.

We agree with the circuit court's pretrial ruling that the testimony regarding Stanton's prior use of a gun was inadmissible under Rule 404(b). Rule 404(b) provides,

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The State's evidence that Stanton had drawn a gun after he had been followed home and that he had slapped a woman who had spit in his face was not admitted for the purpose of proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In *Rowdean v. State*, 280 Ark. 146, 655 S.W.2d 413 (1983), the State sought to introduce evidence that the defendant had pulled a gun on another person earlier on the same day that she had committed a murder. This court held that the evidence was not relevant to prove motive, opportunity, intent, or preparation or plan of the murder but was instead the use of a separate prior act to prove another charge. The case at bar is analogous.

Moreover, the evidence presented by the State was unrelated to Stanton's justification defense. In *Rowdean*, the State also introduced evidence that the defendant had pulled a knife on someone a month before the murder. The circuit court allowed the evidence as being probative of who the aggressor was in the murder. This court cited Rule 405(b), which provides, "In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances

SLIP OPINION

of his conduct." This court noted that while the defendant in that case "did plead self–defense, or justification, we do not find that permits the State to offer evidence of specific instances of prior misconduct to show she may have been the aggressor. It was error to do so because her character is not an essential element of her claim of self-defense." *Id*. at 149, 655 S.W.2d at 415. The same analysis applies here.

Rather than arguing that the evidence was admissible under Rule 404(b) or Rule 405(b), the State contends that the evidence was admissible under Rule 404(a)(1) and Rule 405(a). These arguments are equally unavailing. Rule 404(a)(1) provides,

> Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except . . . [e]vidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same.

Rule 405(a) provides,

> In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

Thus, under Rule 404(a)(1), evidence of a person's character or a trait of his character is not admissible for proving that he acted in conformity therewith on a particular occasion, except by the accused or by the prosecution to rebut the same. *Frye v. State*, 2009 Ark. 110, at 9, 313 S.W.3d 10, 15–16 (1994). After the admissibility of character evidence has been established under Rule 404, Rule 405 establishes the methods of proof that may be utilized. *Id*., 313 S.W.3d at 16. Rule 405(a) provides that once character evidence is admissible, one permissible method of proof is by reputation or opinion testimony; further, on cross-


examination, inquiry is allowable into relevant specific instances of conduct. *Id.*, 313 S.W.3d at 16.

Circuit courts have broad discretion in deciding evidentiary issues, and their rulings on the admissibility of evidence are not reversed on appeal absent an abuse of discretion. *See, e.g.*, *Friar v. State*, 2016 Ark. 245, at 17. We hold that the circuit court abused its discretion in allowing the State to question Stanton about these specific instances. As one authority has stated,

> Ordinarily, if the defendant chooses to inject his character into the trial in this sense, he does so by producing witnesses who testify to his good character. By relating a personal history supportive of good character, however, the defendant may achieve the same result. Whatever the method, once the defendant gives evidence of pertinent character traits to show that he is not guilty, his claim of possession of these traits—*but only these traits*—is open to rebuttal by cross-examination or direct testimony of prosecution witnesses.

1 Charles Tilford, *McCormick on Evid*ence § 191 (7th ed.) (emphasis added). Here, though Stanton testified about his personal history, his employment, his military background, his experience relating to handguns, and his charitable work with a motorcycle club, his testimony did not stray into the area of his character for peacefulness or of being a law-abiding citizen. Thus, it was improper for the circuit court to allow the State to present testimony regarding Stanton's character for lack of peacefulness because there was no testimony on that characteristic for the State to rebut. *Compare Hawksley v. State*, 276 Ark. 504, 637 S.W.2d 573 (1982) (stating that because appellant did not testify on direct examination about a character trait of nonviolence, rebuttal testimony was not admissible) *with Spohn v. State*, 310 Ark 500, 837 S.W.2d 873 (1992) (citing same language from *McCormick on Evidence* and stating that appellant's testimony that there was no violence in

his relationship with the victim and that he had never been charged with a criminal offense invited rebuttal from the State on the peacefulness of his character). Because the circuit court abused its discretion in allowing the State to present the testimony, we reverse Stanton's convictions and remand the case for a new trial.

Further, because Stanton received a sentence of life imprisonment, the record has been examined for all objections, motions, and requests made by either party that were decided adversely to Stanton, and no other prejudicial error has been found. *See* Ark. Sup. Ct. R. 4–3(i) (2016).

Reversed and remanded.

*Debra J. Reece*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Kent Holt*, Ass't Att'y Gen., for appellee.