Michael Wayne DURDEN *v.* STATE of Arkansas

CA CR 05-191                                216 S.W.3d 145

Court of Appeals of Arkansas
Opinion delivered October 26, 2005

*William R. Simpson, Jr.*, Public Defender, by: *Clint Miller*, Deputy Public Defender, for appellant.

*Mike Beebe*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

JOHN B. ROBBINS, Judge. Appellant Michael Wayne Durden was convicted in a jury trial of residential burglary, robbery, theft of property, and second-degree battery. He was sentenced to a total of thirty-two years in prison. Mr. Durden appeals, and his sole argument for reversal is that the trial court erred in overruling his objection to comments made by the prosecutor during the State's

closing argument. Mr. Durden argues now, as he did below, that the prosecutor improperly shifted the burden of proof by commenting on Mr. Durden's failure to call a witness to corroborate his testimony. We affirm.

The victim in this case was Jim Heichel. Mr. Heichel testified that he rents an apartment in Little Rock from Helen Schaeffer. Ms. Schaeffer asked Mr. Heichel to do her a favor and let Michael Shane Ward live with him for a while in exchange for a reduction in rent. Mr. Heichel agreed, and not long after that Ms. Schaeffer went to Mr. Heichel's apartment one morning and found Mr. Ward and his friend, Mr. Durden, drunk in the apartment. According to Ms. Schaeffer, she advised both men to leave and never come back.

Mr. Heichel testified that later that evening, Mr. Durden returned to his apartment requesting a bag of clothes that he had left in the closet. Mr. Heichel complied with the request, and after Mr. Durden stayed at the apartment for a while, Mr. Heichel advised him to leave and Mr. Durden left with the clothes.

According to Mr. Heichel, Mr. Durden kept returning to the apartment and was apparently gaining access through a window. On one of these occasions, Mr. Heichel awoke from his sleep and found Mr. Durden trying to disconnect his VCR from his television. Mr. Heichel was able to get Mr. Durden to leave, but he returned again. On this final occasion Mr. Durden told Mr. Heichel that he was going to kill him, and repeatedly struck him with a frying pan while holding him to the floor. Mr. Durden asked for money, and Mr. Heichel gave him thirty dollars. According to Mr. Heichel, the handle broke from the frying pan, whereupon he was able to get up and hit Mr. Durden a time or two. While Mr. Heichel was pounding on the wall to alert his neighbor for help, Mr. Durden exited through the window.

Mr. Heichel did not call the police, explaining that he did not have a telephone. On the following morning, Ms. Schaeffer came by the apartment and found Mr. Heichel bleeding from a head wound. She called the police and an ambulance, but Mr. Heichel did not go to hospital, citing the fact that he had insufficient health insurance. Ms. Schaeffer testified that Mr. Heichel's "head had just been laid open," that he had bruises on his shoulders and arms, and that the walls were bloody with a nearby pan lying on the ground with a broken handle.

Mr. Durden testified on his own behalf, and gave a markedly different version of the events. He acknowledged that he was at Mr. Heichel's apartment on the night at issue. However, he denied breaking into the apartment or starting any altercation.

According to Mr. Durden, he was at the apartment drinking beer with Mr. Heichel and Mr. Heichel's live-in girlfriend, Angela. Mr. Heichel gave him thirty dollars and asked him to go buy some more beer and a rock of cocaine. Mr. Durden complied, and when he returned Mr. Heichel and Angela were in the bedroom. When they emerged, Angela started taking her clothes off. Mr. Durden stated that, at that time, Mr. Heichel gave him a "crazy look" and told him to leave. Then Angela said, "You ain't got to go nowhere, I pay rent here too."

Mr. Durden testified that Mr. Heichel proceeded to attack him with a frying pan and that they struggled before Mr. Heichel fell and hit his head on a table, causing a gash in his forehead. Mr. Durden stated that Mr. Heichel then threw a glass ashtray at him, and that after it missed and hit the door, he threw it back and struck Mr. Heichel in the head. After that, Angela got between the two men, and Mr. Durden exited the apartment. When he tried to return to get his cigarettes, Mr. Heichel slammed the door on his hand. Mr. Durden testified that during the episode he was acting in self-defense.

On cross-examination, Mr. Durden denied ever seeing Ms. Schaeffer or being told to leave the apartment earlier that day. Mr. Durden acknowledged that he knows Mr. Ward, although Mr. Ward was not present during the altercation. Mr. Durden stated that Mr. Ward would be able to verify that Mr. Heichel had a live-in girlfriend, but that at the time of trial he did not know Mr. Ward's whereabouts.

On rebuttal, Mr. Heichel stated that at the time of the events he did not have a live-in girlfriend. Ms. Schaeffer corroborated that fact, stating that she used to go to Mr. Heichel's apartment every day and that, "He's never had a live-in girlfriend."

The assignment of error raised by Mr. Durden in this appeal occurred during the prosecutor's closing argument during the guilt phase of the trial. The following exchange occurred:

> PROSECUTING ATTORNEY (to the jury): All right. So, also, you have heard Helen Schaeffer testify that she was at James Heichel's house usually at one point every

day. There was no live-in girlfriend. You heard her say he can't have overnight guests, he can't have people living there without her knowing about it. She obviously monitors the property, she's over there a lot.

Now, you've heard about this Michael Shane Ward that the defendant has said could verify everything that he has told you all. Where is he?

DEFENSE COUNSEL: Objection, Your Honor. May we approach?

THE COURT: Yes, Ma'am.

DEFENSE COUNSEL (at the Bench): Your Honor, I believe that the State is improperly trying to shift the burden of proof upon us by comments about a failure to call a witness.

THE COURT: Response?

PROSECUTING ATTORNEY: No, Your Honor.

THE COURT: Any questions, Counsel?

DEFENSE COUNSEL: I would ask for an admonishment to the jury.

THE COURT: Counsel, that will be denied. If you raise an issue, the State can comment on your failure to prove it, and that's the way that according to her, is that you raised the issue that someone else was there, and the State can comment on the fact that that person is not here to testify. You may proceed.

PROSECUTING ATTORNEY: Thank you, Your Honor.

Mr. Durden contends that the prosecutor's reference to his failure to call a witness was improper, and that the trial court erred in failing to give an admonition to the jury as requested by his counsel. Citing *Cook v. State*, 316 Ark. 384, 872 S.W.2d 72 (1994), Mr. Durden maintains that a prosecutor's comment on a defendant's failure to call a witness is an effort by the State to shift the

burden of proof to the defendant. In *Sullivan v. Louisiana*, 508 U.S. 275 (1993), the Supreme Court held that the Due Process Clause of the Fifth and Fourteenth Amendments require the prosecutor to prove the defendant's guilt beyond a reasonable doubt. Because the prosecutor in this case shifted the State's burden, Mr. Durden contends that his constitutional rights have been violated.

In further support of his argument, Mr. Durden cites *State v. Brewer*, 505 A.2d 774 (Me. 1985). In that case the appellant was convicted of DWI, and in his testimony he did not deny being intoxicated but instead asserted that Andrew Pratt had been driving the vehicle when they were involved in an accident while appellant was a passenger. Neither party called Mr. Pratt as a witness, and in closing argument the prosecutor asked the trial court as trier of fact to draw an inference adverse to the appellant based on appellant's failure to call Mr. Pratt. In convicting the appellant, the trial court relied in part on the fact that appellant failed to call his best alibi witness who might have cleared him of the charge. However, the Supreme Judicial Court of Maine reversed, and reasoned:

> To allow the missing-witness inference in a criminal case is particularly inappropriate since it distorts the allocation of the burden of proving the defendant's guilt. The defendant is not obligated to present evidence on his own behalf. The inference may have the effect of requiring the defendant to produce evidence to rebut the inference. If he fails to do so, the missing-witness inference allows the state to create "evidence" from the defendant's failure to produce evidence. Such a result is impermissible.
>
> . . . .
>
> We hold, therefore, that in a criminal case the failure of a party to call a witness does not permit the opposing party to argue, or the factfinder to draw, any inference as to whether the witness's testimony would be favorable or unfavorable to either party.

*State v. Brewer*, 505 A.2d at 777 (citation omitted).

We acknowledge that there is a split of authority on this issue and that the Maine Supreme Judicial Court's decision in *State v. Brewer*, *supra*, is in agreement with Mr. Durden's argument on appeal. However, the Arkansas Supreme Court has held otherwise, and we are bound to follow the decisions of our supreme court. *See Scott v. State*, 69 Ark. App. 121, 10 S.W.3d 476 (2000).

■ Appellant argues that the supreme court held in *Cook v. State, supra,* that a comment on a witness's failure to testify is an attempt by the prosecutor to shift the burden of proof. In that case the supreme court stated that such an inference was not a comment about the accused's failure to testify, and that, *"At most,* it was an attempt to shift the burden of proof, and we cannot say that the trial court erred in determining that the instruction remedied that wrong." *Id.* at 387, 872 S.W.2d at 74 (emphasis ours). The instruction was as follows:

> Ladies and gentlemen of the jury, the defendant is not required to prove his innocence. He's not required to subpoena any particular individual for any reason. He does not have to do any of that. And I want to read for emphasis an instruction I've already given.

> There is a presumption of the defendant's innocence in a criminal prosecution. In this case Thomas Cook is presumed to be innocent. That presumption of innocence attends and protects him throughout the trial and should continue and prevail in your minds until you are convinced of his guilt beyond a reasonable doubt.

*Id.* at 386, 872 S.W.2d at 73. Note that in the present case the jury was instructed that closing arguments of counsel are not evidence, that the State must prove its case beyond a reasonable doubt, and that Mr. Durden is presumed to be innocent and is not required to prove his innocence.

■ Subsequent to its decision in *Cook v. State, supra,* our supreme court handed down *Bullock v. State,* 317 Ark. 204, 876 S.W.2d 579 (1994). In that case the appellant was charged with aggravated robbery and gave an alibi in support of his defense of mistaken identity. During closing argument, the prosecutor stated: "Mr. Bullock tells you that he was over at Dot Doe's house moving. He said he got a check. They don't have that check here today." Mr. Bullock moved for a mistrial based on the fact that the prosecutor referred to evidence the defense was not required to prove. The motion was denied by the trial court, and in affirming the supreme court reasoned:

> The trial court did not abuse its discretion in denying appellant's request for a mistrial. The prosecutor's remarks were not a comment on appellant's failure to testify or to produce evidence, but an attempt to reiterate the attack on the credibility of appellant's

testimony. *See Cook*, 316 Ark. 384, 872 S.W.2d 72. Such a review of the evidence is not prohibited given that appellant took the stand and offered the alibi testimony. Appellant cannot testify on his own behalf and then expect the Fifth Amendment to prohibit the state from questioning the credibility of his testimony or from calling the lack of credibility to the jury's attention during closing argument.

At most, the prosecutor's comments were a mischaracterization of the evidence. No objection was made on that basis, nor was any request for an admonition made. The trial court, however, *sua sponte*, instructed the jury that the prosecutor's comments were not to be considered evidence. Such an admonition was appropriate in this particular case and removed any possible prejudice. Moreover, immediately after the trial court's admonition, the prosecutor told the jury that appellant was not required to prove his innocence and that it was their job to assess his credibility. The trial court did not err in this case.

*Bullock v. State*, 317 Ark. at 206, 876 S.W.2d at 580-81.

█ Similarly, in *Noel v. State*, 331 Ark. 79, 960 S.W.2d 439 (1998), the supreme court affirmed where the appellant testified he was not there when the crimes occurred and named several alibi witnesses, and then the prosecutor commented during closing on the witnesses' failure to take the stand. The supreme court held that there was no error in the trial court's failure to declare a mistrial, and announced:

> This case is no different from *Bullock v. State, supra*, or *Cook v. State, supra*, in that it was the actions of defense counsel and Noel himself that put his credibility in issue. It was a fair inference to be argued to the jury that the failure of Noel to call any alibi witness to the stand undermined his credibility. Any prejudice resulting from the prosecutor's allusion to absent testimony could have been easily cured by an admonishment, which defense counsel did not request. *Cook v. State, supra*.

*Id.* at 89, 960 S.W.2d at 444.

█ The position of the Arkansas Supreme Court is consistent with the holdings of federal circuit courts. In *United States v. Gomez-Olivas*, 897 F.2d 500 (10th Cir. 1990), the federal appeals court held that as long as evidence can be solicited other than from the mouth of the accused, it is proper to comment on the failure of

the defense to produce it. The court further held that the prosecutor's argument about the appellant's failure to produce exculpatory documents to corroborate his testimony did not shift the burden of proof in light of the trial court's subsequent instructions to the jury that arguments of lawyers are not evidence, that the burden of proof is with the government, and that the defendant has no burden to prove innocence, to call witnesses, or to produce any evidence. *Id.* Similarly, the Second Circuit Court of Appeals has stated, "It is established that the government may comment on a defendant's failure to call witnesses to support his factual theories." *United States v. Bautista,* 23 F.3d 726 (2nd Cir. 1994) (citations omitted). And the Eighth Circuit Court of Appeals has recently stated that, in general, the government may comment on the failure of the defense, as opposed to the defendant, to counter or explain the evidence unless the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify. *United States v. Gardner,* 396 F.3d 987 (8th Cir. 2005).

██ ██ In *Bullock v. State, supra,* the Arkansas Supreme Court stated that the trial court has broad discretion to control closing argument and, having observed the argument firsthand, is in a better position than the appellate court to determine the possibility of prejudice. Given the relevant holdings of our supreme court, there was no abuse of discretion in the trial court's permitting the prosecutor to comment on Mr. Ward's failure to give corroborating testimony, as this amounted to a permissible attack on Mr. Durden's credibility. To the extent that the prosecutor's comments could be construed by the jury to be a shifting of the burden of proof, any prejudice in this regard was cured by the instructions given to the jury. *See Cook v. State, supra.*

Affirmed.

GLADWIN and BAKER, JJ., agree.