Cite as 2024 Ark. App. 126

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CR-23-214

|  |  |
|---|---|
| KEVIN GREEN<br><br>APPELLANT<br><br>V.<br><br><br>STATE OF ARKANSAS<br>APPELLEE | Opinion Delivered February 21, 2024<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT<br>[NOS. 66FCR-07-138, 66FCR-18-383, 66FCR-19-331]<br><br>HONORABLE STEPHEN TABOR, JUDGE<br><br>AFFIRMED |

**CINDY GRACE THYER, Judge**

Kevin Green appeals the revocation of his suspended imposition of sentence (SIS) entered by the Sebastian County Circuit Court. On appeal, Green argues that there was insufficient evidence to support the revocation. In addition, he asserts that the circuit court should have granted his motion for continuance, that he should have been provided the identity of a confidential informant, and that his Confrontation Clause rights were violated. We find no error and affirm.

I. *Factual and Procedural Background*

In 2007, Green pleaded guilty to manufacturing methamphetamine in case number 66FCR-07-138 and was sentenced to twenty years' imprisonment followed by ten years' SIS. Green was paroled in 2015, but his SIS was revoked in September of that year; at that time,

he was sentenced to one year in the Arkansas Department of Correction (ADC) and nine years' SIS. In 2019, Green entered guilty pleas in case numbers 66FCR-18-383 and 66FCR-19-331 (possession of oxycodone, possession of marijuana, and possession of drug paraphernalia). In those cases, he was sentenced to four years in the ADC followed by eleven years' SIS. His SIS in all three cases was "conditioned on good behavior."

On November 15, 2021, the State filed a petition to revoke Green's SIS in all three cases, alleging that he committed the offense of delivery of methamphetamine in August 2021; in addition, the State contended that Green had failed to pay costs as ordered in case numbers 66FCR-07-138 and 66FCR-19-331.

A revocation hearing was eventually scheduled for January 12, 2023. On December 7, 2022, Green filed a motion seeking an ex parte in camera hearing in order to determine whether there was a potential conflict with his representation by the public defender's office. On the same day, Green filed a motion to disclose the identity of the confidential informant (CI) who was alleged to have purchased the drugs in the transaction that formed the basis of the State's petition to revoke. On December 21, the circuit court held an in camera hearing to address the potential conflict; however, Green did not present his motion to disclose the CI's identity at that time.

On January 5, 2023, Green moved to continue the scheduled January 12 hearing. He asserted that he had been in ADC custody from July 26 until December 21, 2022, during which time he had limited access to counsel and family members. After he was transferred to the Sebastian County Detention Center on December 21, he had been able to have

2

"significant contact with local family members" who were actively seeking to hire private counsel.

On the morning of the revocation hearing, counsel orally argued the continuance motion, again citing Green's family's desire to hire private counsel and the need for more time to do so. In addition, counsel stated that when he met with Green at the jail on January 10, Green disclosed "for the first time what could possibly be alibi witnesses that I have not been able to track down." The court denied the request for a continuance, stating, "He could have disclosed that to you before now. He made the choice when to disclose. If he didn't do it timely, that's on him. It's law day. We are going to have a hearing. Motion denied."

The court then proceeded to hear testimony relative to the revocation petition. Detective Joseph Triplett of the Fort Smith Police Department testified that he was the case agent on a matter in which a CI had arranged to purchase an ounce of methamphetamine from Green.[1] Triplett and his co-case agent, Detective Tim Koenigseder, met with the CI and checked the CI for contraband or other currency. Nothing was found in the CI's pockets or vehicle. The officers then counted out the buy money, started a recording device, and took the CI to meet with Green. Once they took the CI to the meeting place, Triplett saw the CI meet with Green. The CI got in Green's car, and Green drove off. Triplett, Koenigseder, and other officers took turns following Green's car and maintained audio and visual surveillance on it the entire time. Green stopped at an address on Memphis Street.

---

[1]This statement was the subject of a hearsay and confrontation-clause objection from Green, which will be discussed below.

The CI remained in the vehicle, but Green got out of the car, went inside the residence briefly, then returned to his car, which he drove back to the spot where he initially met the CI. Green dropped off the CI then drove away.

Triplett and Koenigseder then met the CI back at their original meeting point. The CI presented Triplett with 28.2 grams of methamphetamine[2] that the CI had purchased from Green with the controlled-buy money. In addition, Triplett collected the recording device from the CI. Triplett later reviewed the audio recording and determined that it matched what he had seen during the operation.

On cross-examination, Triplett conceded that he was not in the vehicle with Green and the CI and did not personally see the exchange of money for the drugs. He further acknowledged that he was relying exclusively on the CI to know that an exchange of drugs and money took place.

Detective Koenigseder testified that he searched the CI's pockets, person, and vehicle and determined that the CI was not carrying any additional money or drugs. He described the operation just as Triplett did, saying that they met with the CI at one location, gave the CI a covert recording device and some marked buy money, and then the CI left that location to meet with Green at a different location. The officers saw the CI get into Green's vehicle, and then they left that location and went to another location, followed by officers from the narcotics unit. The CI and Green were under constant surveillance by the narcotics unit

---

[2]Subsequent testing at the state crime lab confirmed that the substance recovered from the CI was methamphetamine.

during the entirety of the controlled buy. Once the operation was completed, the CI gave Triplett the recording device and the drugs, and Koenigseder checked the CI's car and pockets again to make sure there was no additional drugs, money, or contraband. On cross-examination, Koenigseder acknowledged that he did not physically see Green inside the vehicle.

Sergeant Keith Shelby, who was part of the line of police surveillance vehicles, described the car that Green and the CI got into as "some type of SUV with some fancy wheels on it, fancy chrome wheels." He said that he knew Green from "previous encounters" and had seen Green driving that particular car within the last month. He did not, however, run the tags of the vehicle that "the CI and the suspect" were in.

The State then recalled Triplett to ask about the audio recording that the CI made while in the car. The State asked Triplett how he knew that "this defendant is the one who transferred the drugs to the confidential informant for the controlled buy money." Triplett responded that the only thing he had to go by was his voice. Although he acknowledged that portions of the audio recording were inaudible, he explained that he had dealt with Green several times over the years and that Green has a "very distinct" voice, noting that he "speaks very low and mumbles." Triplett added that he had dealt with Green and heard his voice at least half a dozen times.

The State then called four additional officers to testify about their individual roles in maintaining constant visual surveillance of the vehicle in which the CI was traveling. At the conclusion of the hearing, Green renewed his hearsay and confrontation-clause objection

5

and argued to the court for the first time his motion for the State to reveal the identity of the confidential informant. He further sought dismissal on the grounds that the State failed to prove that he was, in fact, the person in the vehicle with the CI and that the detectives had relied solely on the CI's representation that Green was the person who sold the drugs. The State responded by citing Triplett's testimony that he recognized Green's distinctive voice on the audio recording and Shelby's testimony that he knew the car that the CI got into belonged to Green. The court denied Green's motion to dismiss, finding that the voice identification was "enough to get it past a directed verdict." The court also found that the State's case was bolstered by Shelby's testimony that he had previously seen Green driving the suspect vehicle. The court therefore revoked Green's SIS and sentenced him to eleven years in the ADC. Green timely appealed.

## II. *Discussion*

### A. Sufficiency of the Evidence

A circuit court may revoke a defendant's SIS at any time prior to its expiration if the "court finds by a preponderance of the evidence that the defendant has inexcusably failed to comply with a condition of his or her suspension of sentence[.]" Ark. Code Ann. § 16-93-308(d) (Supp. 2023). Evidence that is insufficient for a criminal conviction may be sufficient for the revocation of a suspended sentence. *Phounsavath v. State*, 2016 Ark. App. 65, 482 S.W.3d 332. On appeal, we will not reverse the circuit court's findings unless they are clearly against the preponderance of the evidence. *Thompson v. State*, 2019 Ark. App. 421, 586 S.W.3d 682. Because the preponderance of the evidence turns on questions of credibility

6

and weight to be given testimony, our court defers to the superior position of the circuit court to decide these matters. *Honeycutt v. State*, 2024 Ark. App. 54, ___ S.W.3d ___.

In each of his cases, Green's SIS was "conditioned upon good behavior."[3] The circuit court ultimately determined that the State had met its burden of showing that Green had violated the terms of his SIS by engaging in the drug transaction with the CI. In reaching its decision, the court specifically relied on Detective Triplett's identification of Green's distinctive voice on the audio recording and Sergeant Shelby's recognition of Green's vehicle with "fancy chrome wheels."

Green argues on appeal that the court's reliance on Triplett's identification of his voice was improper because the "voice recognition lacks the reliability present in other cases in which it was the sole or primary evidence of guilt."[4] When a witness makes a positive identification of a subject, however, any challenge to the reliability of the identification becomes a matter of credibility for the fact-finder to determine. *See Martin v. State*, 2021 Ark. App. 463 (affirming aggravated-robbery conviction on the basis of victim's visual identification of the defendant).

In the recent case of *Leonard v. State*, 2023 Ark. App. 92, this court affirmed the revocation of appellant Leonard's SIS on the basis of the victim's identification of Leonard's

---

[3]The circuit court took judicial notice of the conditions of his SIS at the conclusion of the revocation hearing.

[4]Although Green assigns error to the court's reliance on Shelby's identification of his vehicle in the first sentence of this point on appeal, he does not develop or address that point further.

voice. There, the victim testified that Leonard was the person whom he heard saying "get the f*** out of the house" as the house was being set on fire. The State asked how the victim knew it was Leonard, and the victim answered, "Because I could hear his voice. I know what his voice sounds like." *Id.* at 2. In affirming, this court acknowledged Leonard's argument that our supreme court has not affirmed a conviction supported by only a voice identification, but we also pointed out that "none of the cited opinions . . . squarely decline to do so either." *Id.* Moreover, this court noted that Leonard was "not appealing a conviction. The preponderance-of-the-evidence standard applies here, which is less than a conviction would require." *Id.* (citing *Bradley v. State*, 347 Ark. 518, 65 S.W.3d 874 (2002)); *see also Henderson v. State*, 288 Ark. 331, 705 S.W.2d 15 (1986) (affirming aggravated-robbery conviction when witnesses were able to recognize appellant's distinctive voice); *Wilson v. State*, 282 Ark. 551, 669 S.W.2d 889 (1984) (holding that identification of the appellant by the victim, made after a voice lineup, was permissible).

Here, the circuit court determined that Triplett's identification of Green's voice was credible, specifically citing Triplett's testimony that he "had experience on at least [a] half dozen occasions in speaking with the defendant and recognized his voice." Green's argument on appeal essentially asks this court to reject the court's credibility determination and find Triplett's testimony unreliable, which of course we do not do. *See Shoulders v. State*, 2020 Ark. App. 235, 598 S.W.3d 77. Given the lower preponderance-of-the-evidence standard applicable in revocation proceedings, we find no error with the circuit court's conclusion that Green violated the terms and conditions of his SIS.

8

## B. Continuance

Green next argues that the circuit court should have granted his motion to continue the revocation hearing. Arkansas Rule of Criminal Procedure 27.3 provides that a circuit court "shall grant a continuance only upon a showing of good cause and only for so long as is necessary, taking into account not only the request or consent of the prosecuting attorney or defense counsel, but also the public interest in prompt disposition of the case." The denial of a motion for a continuance is reviewed for abuse of discretion. *Davis v. State*, 2019 Ark. App. 502, 588 S.W.3d 790. In order to warrant reversal, an appellant must both demonstrate that the circuit court abused its discretion in denying the continuance and also show prejudice from the denial of the continuance that amounts to a denial of justice. *Id.*

Green was represented at his revocation by a public defender. His first reason for seeking a continuance was so that his family could hire private counsel. Although a defendant must be offered a reasonable opportunity to obtain competent counsel, once competent counsel is obtained, any request for a change must be considered in the context of the public's interest in a reasonably prompt and competent dispensation of justice. *Caswell v. State*, 63 Ark. App. 59, 973 S.W.2d 832 (1998) (citing *Leggins v. State*, 271 Ark. 616, 609 S.W.2d 76 (1980)). If such a change would require the postponement of trial because of inadequate time for a new attorney to properly prepare a defendant's case, in denying or granting the change, the court may consider such factors as the reasons for the change, whether other counsel has already been identified, whether the defendant has acted

diligently in seeking the change, and whether the denial is likely to result in any prejudice to defendant. *Id.*

Here, over a year after the revocation petition had been filed, Green sought a continuance because his family wanted to attempt to hire private counsel; however, he did not identify any other counsel, and he did not make his request until his motion was filed only a week before the revocation hearing. In addition, he had already been granted a prior continuance. On similar facts, this court has held that the denial of a motion for continuance to obtain new counsel was not an abuse of discretion. *See Brewer v. State*, 2017 Ark. App. 335, 525 S.W.3d 24.

Green's second reason for seeking a continuance was that he needed time to track down alibi witnesses. The court rejected his argument, noting that he "could have disclosed that before now." Again, we find no abuse of discretion in the court's decision. *See Green v. State*, 354 Ark. 210, 215, 118 S.W.3d 563, 566 (2003) (holding that defendant's failure to provide counsel with information is "a prime example of a lack of diligence" that alone is sufficient cause to deny a continuance) (quoting *Ware v. State*, 248 Ark. 181, 195, 75 S.W.3d 165, 173 (2002)).

## C. Disclosure of Confidential Informant

In his next point on appeal, Green challenges the circuit court's denial of his motion to compel disclosure of the confidential informant. Arkansas Rule of Criminal Procedure 17.5(b) provides that "[d]isclosure shall not be required of an informant's identity where his identity is a prosecution secret and a failure to disclose will not infringe upon the

constitutional rights of the defendant." When the disclosure of the informant's identity is relevant and helpful to the defense of an accused or is essential to a fair determination of a cause, the privilege must give way. *Reyes v. State*, 329 Ark. 539, 552, 954 S.W.2d 199, 205 (1997). We review a court's decision to deny a request to reveal the identity of a confidential informant for an abuse of discretion. *Id.*

Before addressing the merits of Green's argument, however, we must consider the State's contention that Green failed to preserve this issue for appeal. Green filed a motion to disclose the CI's identity on December 7, 2022, along with a motion for an in camera hearing on a potential conflict of interest. The court held the in camera hearing on the alleged conflict on December 21. While Green suggested that the public defender's office also represented the CI, he made no argument regarding the identity of the CI and did not pursue his motion to disclose at that time.

The revocation hearing was held on January 12. The court took up Green's motion for continuance at the beginning of the hearing. That motion, however, was the only matter addressed before the first witness began testifying. Green did not mention his motion to disclose until he "renewed" it after the State rested. At that time, the court did not deny his motion but merely commented that it thought "the State suffers from not having that person here as a witness, and I think that's going to have to suffice as far as your relief in this."

We conclude that Green's posthearing "renewal" of his motion was untimely, and in any event, he failed to obtain a specific ruling on it. We therefore hold that this point is not preserved for appeal. *See Buckley v. State*, 2023 Ark. App. 330, at 12, 669 S.W.3d 631, 640

11

("matters left unresolved are waived and may not be raised on appeal.") (quoting *Alexander v. State*, 335 Ark. 131, 134, 983 S.W.2d 110, 111 (1998)).

## D. Confrontation Clause

Finally, Green argues that his confrontation-clause rights were violated when the circuit court overruled his hearsay objection to a portion of Detective Triplett's testimony. That exchange was as follows:

STATE:    [O]n August 24, 2021, did you have cause to come into contact or have a case involving the defendant, Kevin Green?

TRIPLETT:    Yes. I actually was the case agent on this matter. It was--my confidential informant had arranged to purchase an ounce of methamphetamine from Mr. Green.

STATE:    Could you please take the Court through that day, how it was set up, what happened, what was involved?

TRIPLETT:    So basically I was contacted, told that Mr. Green was--

DEFENSE:    Judge, I'm going to object. Calls for testimony--or hearsay under *Wright v. State* contemplating *Crawford v. Washington*. I don't believe he can testify to what the confidential informant said.

STATE:    I would offer that this is not being offered for the truth of the matter asserted, just to get out what Detective Triplett did and why he did it.

COURT:    It will be received for that purpose.

TRIPLETT:    So the confidential informant contacted me, told me that they could buy an ounce of methamphetamine from Mr. Green. Basically contacted the rest of the detectives that work with me, got them up to speed with basically the plan. I did an operational plan memo for this.

At the conclusion of the hearing, Green renewed his objection to Triplett's testimony, again arguing that it was "testimony on hearsay in reference to *Crawford v. Washington* and the

confrontation-clause issue." The court ruled that the State "had conceded that that would be not considered for the truth of whatever was said. And I can assure you I will not as well."

On appeal, Green maintains his argument that the introduction of Triplett's statement about what the confidential informant told him was hearsay and violated his confrontation-clause rights. This court has observed that although the rules of evidence, including the hearsay rule, are not strictly applicable in revocation proceedings, the right to confront witnesses does apply. *Caswell v. State*, 63 Ark. App. 59, 973 S.W.2d 832 (1998); *Goforth v. State*, 27 Ark. App. 150, 767 S.W.2d 537 (1989). An out-of-court statement is not hearsay, however, if it is offered, not for the truth of the matter asserted, but to show the basis of action. *Dednam v. State*, 360 Ark. 240, 200 S.W.3d 875 (2005). Testimony that is not hearsay raises no confrontation-clause concerns. *Id.*; *see also Crawford v. Washington*, 541 U.S. 36, 59–60 n.9 (2004) (observing that the Confrontation Clause does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted); *United States v. Tucker*, 533 F.3d 711 (8th Cir. 2008) (noting that testimonial statements offered for purposes other than their truth do not implicate the Confrontation Clause).

Here, Green is challenging testimony that was not hearsay because it was not offered for the truth of the matter asserted. From the colloquy between the court and the prosecutor, set out above, it is evident that the court allowed Triplett's testimony for the limited purpose of establishing the reason why Triplett set up his operational plan for conducting the controlled buy. Because the circuit court expressly determined that the testimony was not

being offered for its truth, the court's ruling did not offend the Confrontation Clause. We therefore find no merit in Green's argument.

Affirmed.

ABRAMSON and VIRDEN, JJ., agree.

*The Law Office of Geoffrey D. Kearney, PLLC*, by: *Geoffrey D. Kearney*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee.