Cite as 2025 Ark. App. 178

# ARKANSAS COURT OF APPEALS
### DIVISION III
No. CR-23-591

| | |
|---|---|
| TRISTAN TIARKS<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | Opinion Delivered March 19, 2025<br><br>APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. 04CR-19-75]<br><br>HONORABLE ROBIN F. GREEN, JUDGE<br><br>AFFIRMED |

**CINDY GRACE THYER, Judge**

Tristan Tiarks was convicted of the rape, aggravated assault, and second-degree domestic battery of a three-year-old child. After his conviction was affirmed on appeal,[1] he filed a timely Rule 37.1 petition for postconviction relief, which was denied by the Benton County Circuit Court without a hearing. He appeals.

A brief summary of the testimony presented at trial was provided in our previous opinion and is restated here. Leah Brasuell, who has three daughters (MC1, MC2, and MV),[2] testified that she was engaged to Tiarks, who has three children of his own (MC3, MC4, and MC5). On January 10, 2019, Brasuell and Tiarks were planning a birthday party for MC4.

---

[1]*Tiarks v. State*, 2021 Ark. App. 325, 633 S.W.3d 788.

[2]The "MV" designation refers to the minor victim in this case; the "MC" designation refers to the other minor children peripherally involved.

Brasuell said that around 6:00 p.m., she and MC2 went to Walmart to pick up supplies for the party and that she left MV with Tiarks at his home. When Brasuell returned around 7:15 p.m., Tiarks told her that MV had fallen asleep while she was playing, so he put her to bed. Brasuell did not check on MV.

The next morning, Brasuell went to the bathroom and saw Tiarks wiping MV's bottom. He told Brasuell that there was blood on MV's bottom. Brasuell stated that she picked up MV, put her on a bed, spread her legs, and saw bright red blood coming from her vagina. Later that morning, Brasuell asked MV what happened the night before, and MV said that Tiarks put a towel around her neck. MV denied that Tiarks put something in her bottom. Brasuell promptly sought medical treatment for MV at the emergency room in Bella Vista, Arkansas.

Emergency-room nurse Sarah Hansen testified that she performed the initial examination of MV on January 11. Hansen said that MV had petechiae—small red spots from burst blood vessels that are caused by bearing down, squeezing, or cutting off airways for a prolonged period of time—around her eyes and face and red ligature marks on her neck, all of which were medically consistent with her report that a towel had been wrapped around her neck. Hansen said the police were notified, and MV was referred to the Children's Advocacy Center (CAC) in Rogers, Arkansas, for a sexual-assault examination.

Heather Dawn Hannah, a nurse practitioner at the CAC, testified that she performed a videotaped forensic examination of MV on January 11. Hannah testified that she saw redness and petechiae on MV's face and neck, bright red blood in MV's underwear, dried

2

blood on her genital area, and a fresh tear that was still bleeding that extended past her external genital organ into her vagina. Hannah stated that the vaginal injury had occurred within the past twenty-four to thirty-six hours. When Hannah touched MV's genitals to determine the severity of the injuries, MV became upset, and Hannah stopped the exam. Hannah then consulted with Dr. Karen Farst, a child-abuse pediatrician at Arkansas Children's Hospital in Little Rock. After the consultation, Hannah recommended MV undergo a sedated examination at Arkansas Children's Hospital–Northwest (ACHNW), a CT scan to check for brain damage, and a full-body skeletal survey to check for broken bones. At ACHNW, Hannah performed a second genital examination of MV while she was under sedation. Hannah discovered that MV's genital tear extended past the posterior fourchette, through the vestibule, fossa, and hymen and into the vaginal floor. Hannah compared the injury to a first-degree tear from childbirth.

Dr. Farst testified that Hannah contacted her on January 11 for a consultation on MV's treatment. Dr. Farst, who watched the video of Hannah's examination of MV, stated that she saw active bleeding in MV's vagina but could not determine the depth or source of the injury. Dr. Farst said that she recommended further examination under sedation at ACHNW along with the skeletal survey and CT scan. From her review of the video, Dr. Farst believed that the vaginal injury had occurred within twenty-four to thirty-six hours of the examination.

Tiarks testified that on the night of January 10, he watched MV while Brasuell and MW went to Walmart. Tiarks said while they were gone, MV fell asleep, and he put her to

3

bed. The next morning, he woke MV up and took her to the bathroom and saw blood on her bottom. Tiarks agreed that MV had been raped, that it had occurred within twenty-four to thirty-six hours of her medical examinations, and that she had no neck or vaginal injuries when he put her to bed on January 10. However, he denied having harmed her. He also denied that he was the only person with MV during the time period in question.

The jury found Tiarks guilty of rape, aggravated assault, and second-degree domestic battery. He appealed, and we affirmed his conviction.

On February 13, 2022, Tiarks, through counsel, filed a timely verified Rule 37.1 petition alleging twelve bases for relief. He alleged that trial counsel was ineffective (1) for stipulating to the admissibility of MV's statements to her mother on January 11, 2019; (2) by failing to object to MV's hearsay statements; (3) by failing to call a crime-lab technician to testify regarding DNA evidence; (4) by opening the door to prior allegations of sexual misconduct; (5) by failing to make clear that prior allegations regarding his children were unsubstantiated; (6) by failing to object when the State informed the jury that MV was refusing to testify; (7) by failing to object to Tim Brasuell's insinuation that Tiarks fit the profile of a sex offender; (8) for failing to object to improper comments by the State in closing argument; (9) for failing to make a cumulative-error objection; (10) for failing to call sentencing witnesses; and (11) for failing to investigate and uncover Leah Brasuell's text

messages. He also reserved the right to argue that counsel was ineffective in how voir dire was conducted.[3]

After the State responded to the petition, the circuit court denied the petition without holding an evidentiary hearing. Its order denying the petition was detailed and addressed each point of alleged error. Tiarks has now appealed the order denying his Rule 37 petition, and we will address each of his arguments in turn.

## I. *Standard of Review*

This court will not overturn the denial of postconviction relief absent a finding of clear error. *Harmon v. State*, 2023 Ark. 179, 678 S.W.3d 392; *Williams v. State*, 2016 Ark. 459, 504 S.W.3d 603. A finding is considered clearly erroneous when, despite some supporting evidence, our review of the entire record leaves us with a definite and firm conviction that an error has occurred. *Harmon*, 2023 Ark. 179, at 2, 678 S.W.3d at 392; *Williams*, 2016 Ark. 459, at 2, 504 S.W.3d at 605.

We review a defendant's ineffective-assistance-of-counsel claims using the two-step analysis outlined in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Harmon*, 2023 Ark. 179, at 4, 678 S.W.3d at 393. Under *Strickland*, a petitioner is required to show that his trial counsel's performance was deficient and that the deficiency prejudiced his defense. *Id.*

Regarding the threshold issue of deficiency, we presume that a trial counsel's performance was sufficient. *Holland v. State*, 2022 Ark. 138, 645 S.W.3d 318. To overcome

---

[3]When the Rule 37 petition was filed, counsel had yet to receive a transcript of voir dire. He has since abandoned any voir dire related argument on appeal.

that strong presumption, the petitioner must demonstrate specific acts and omissions that—when viewed from the trial counsel's perspective over the course of the trial—could not have been the result of "reasonable professional judgment." *Id.* at 2, 645 S.W.3d at 321. Allegations without factual substantiation are insufficient. *Thomas v. State*, 2022 Ark. 12, 637 S.W.3d 268. Furthermore, merely conclusory statements that one's counsel was ineffective cannot be the basis for postconviction relief. *Id.*

As for the remaining issue of prejudice, a petitioner must affirmatively demonstrate that the deficiency resulted in a prejudicial outcome. *Holland*, 2022 Ark. 138, at 2, 645 S.W.3d at 321. He must show that there is a reasonable probability that the fact-finder's decision would have been different absent trial counsel's deficiencies. *Id.* This is a high bar. If a Rule 37 petition fails at the threshold issue of deficiency, we need not address the remaining prong that weighs its potential prejudicial effect. *Arnold v. State*, 2022 Ark. 191, 653 S.W.3d 781.

## II. *Arguments on Appeal*

Tiarks argues that his trial counsel was ineffective for multiple reasons and that the circuit court erred in finding otherwise. Notably, each allegation of counsel's incompetence must be evaluated separately since this court does not recognize cumulative error in allegations of ineffective assistance of counsel. *Whiteside v. State*, 2024 Ark. 30, 684 S.W.3d 588; *Isom v. State*, 284 Ark. 426, 682 S.W.2d 755 (1985). *See Parks v. State*, 301 Ark. 513, 785 S.W.2d 213 (1990); *Jones v. State*, 308 Ark. 555, 826 S.W.2d 233 (1992). Accordingly, Tiarks's ineffective-assistance arguments will be discussed independently.

6

## A. Deficient Performance

### 1. *Stipulation to the admissibility of MV's statements to her mother*

Tiarks first takes issue with counsel's stipulation to the admissibility of MV's statements to her mother the morning after the alleged assault. In that statement, which was recorded and played for the jury, MV told her mother that Tiarks had wrapped a blanket around her neck and had talked angrily to her. Counsel stipulated that MV's statements were admissible as excited utterances. The circuit court, in denying the petition on this issue, found that the case law and record were clear that it would not have sustained a hearsay objection had one been made. It further found that no prejudice would have occurred because the evidence would have been cumulative and because no other individual had contact with MV or had the opportunity to rape her.

Tiarks claims this was erroneous. He argues that, had counsel objected to the statements, they would have been excluded because they did not fall within the definition of an excited utterance. He argues that, when the statement was made, MV—a child—was calm and well rested; that her statements were in response to her mother's questioning; and that the statement occurred at least twelve hours after the alleged startling event. He further claims that the admission of these statements was highly prejudicial because (1) MV did not testify at trial, (2) the State relied heavily on MV's statements to her mother during closing arguments, and (3) this court relied on the statements in affirming Tiarks's conviction on appeal. We disagree.

Arkansas Rule of Evidence 803(2) provides an exception to the hearsay rule for excited utterances, regardless of the availability of the declarant. This court has, on numerous occasions, applied this exception to cases involving the testimony of young children who may or may not eventually testify at trial.

For the exception to apply, there must be an event that startles or excites the declarant. *Rodriguez v. State*, 372 Ark. 335, 276 S.W.3d 208 (2008). Our supreme court has held that sexual abuse of a child is a startling event within the meaning of Rule 803(2). *Killcrease v. State*, 310 Ark. 392, 836 S.W.2d 380 (1992). In addition, it must appear that the declarant's condition at the time was such that the statement was spontaneous, excited, or impulsive rather than the product of reflection and deliberation. *Fudge v. State*, 341 Ark. 759, 20 S.W.3d 315 (2000). The statements must be uttered during the period of excitement and must express the declarant's reaction to the event. *See id.* Whether the statement made was an excited utterance of sexual abuse rather than one made after intervening reflection and deliberation is a matter within the circuit court's discretion, and an appellate court will not reverse the circuit court's decision regarding the admission of evidence absent a manifest abuse of discretion. *Frye v. State*, 2009 Ark. 110, 313 S.W.3d 10.

There are several factors to consider when determining whether a statement falls under the excited-utterance exception in Rule 803(2): the lapse of time, the age of the declarant, the physical and mental condition of the declarant, the characteristics of the event, and the subject matter of the statement. *Smith v. State*, 303 Ark. 524, 798 S.W.2d 94 (1990). When adopting these factors from the decision in *United States v. Iron Shell*, 633 F.2d 77 (8th

Cir. 1980), our supreme court observed that the lapse of time between the startling event and the out-of-court statement, although relevant, is not dispositive. *Frye*, 2009 Ark. 110, at 3–4, 313 S.W.3d at 13. That the declarant's statement was made in response to an inquiry is likewise not controlling. *Id.*

As the State points out, the statements here would likely have been admitted as an excited utterance even absent the stipulation. MV was three years old at the time of the alleged assault.[4] She had been drugged, choked, and sexually assaulted. While the alleged assault had occurred the night before, there was testimony that MV appeared to be in a state of shock when she arrived at the emergency room in Bella Vista the morning after making the statements to her mother. Her medical examination revealed strangulation resulting in ligature marks around her neck and petechia around her hairline, eyes, mouth, and ears. The injuries to her vagina were such that she had a tear from her labia majora, past her hymen, and into her vaginal vault. Thus, the event would clearly be characterized as traumatic, especially to a young child.

Moreover, MV was expected to testify at trial; thus, it could be expected that she would repeat these inculpatory statements during her in-person testimony. What she might not testify to at trial, however, is her repeated claims the following morning that Tiarks had

---

[4]A rationale for relaxing the general rule was stated in *In re O.E.P.*, 654 P.2d 312, 318 (Colo. 1982): "The element of trustworthiness underscoring the excited utterance exception, particularly in the case of young children, finds its source primarily in the 'lack of capacity to fabricate rather than the lack of time to fabricate.'" (Quoting Fed. R. Evid. 803(2) advisory committee's note.)

not touched her nor inserted anything into her vagina. The stipulation to the statements was the one way counsel was assured of getting this potentially exculpatory information before the jury. This is reasonable trial strategy and arguably the result of "reasonable professional judgment." Licensed attorneys have considerable discretion in providing their professional assistance, which includes determining which arguments to pursue, which evidentiary objections to raise, and what agreements to make regarding the admissibility of evidence. *Barefield v. State*, 2024 Ark. 141, 696 S.W.3d 822. Matters of trial strategy and tactics, even if arguably improvident, fall within the realm of counsel's professional judgment and are not grounds for finding ineffective assistance of counsel; there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and the burden is on the petitioner to overcome this presumption and identify specific acts and omissions by counsel that could not have been the result of reasoned professional judgment. *Hoover v. State*, 2024 Ark. App. 255, 688 S.W.3d 155.

While MV ultimately did not testify at trial—making these statements more prejudicial—at the time of the stipulation and its admission, trial counsel was unaware that she would not be testifying. As our supreme court has stated, "Trials are long and arduous, and their ever-developing nature can "affect and alter an original defense strategy. . . ." *Barefield*, 2024 Ark. 141, at 6, 696 S.W.3d at 828 (quoting *Conley v. State*, 2014 Ark. 172, at 7, 433 S.W.3d 234, 240). Given the information available at the time of the stipulation, trial counsel's actions could be seen as reasonable trial strategy.

10

In light of the foregoing, we cannot say it was clear error for the circuit court to deny Tiarks's claim on this issue.

## 2. *Failure to object to hearsay*

Tiarks next argues that trial counsel was ineffective for failing to object on hearsay grounds to several statements attributed to MV. Tiarks claims counsel should have objected to Detective Boothman's statements that MV had identified Tiarks as her abuser, had described the object that was used on her, and had disclosed that Tiarks had given her medicine. Tiarks also objects to Detective Boothman's testimony that while executing a search warrant, he was looking for a green towel because MV had described it as the object she had been strangled with. Tiarks claims that this testimony was clearly hearsay offered for the truth of the matter asserted—that Tiarks had attacked MV using a towel—and was not introduced to show Detective Boothman's course of conduct. He also challenges statements included in Dawn Thompson's sexual-assault nurse examiner (SANE) report that MV complained of "butt pain," that she disclosed someone "wrapped a towel around her neck," and that "Tristan is mean." Neither of his arguments has any merit.

As for the testimony of Detective Boothman, his statements were not offered for the truth of the matter asserted; instead, they were offered to show his course of conduct during the investigation. Arkansas Rule of Evidence 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." An out-of-court statement is not hearsay, however, if it is offered not for the truth of the matter asserted but to show the basis of action. *Green v.*

*State*, 2024 Ark. App. 126, 685 S.W.3d 294. Here, these statements were elicited from Detective Boothman to describe the actions he took during the course of his investigation. Those statements explained why Boothman applied for a search warrant of Tiarks's house and explained why he was looking for certain items during its execution. Thus, any hearsay objection to those statements would not have been sustained.

As to the statements contained in the SANE report, those statements were elicited during a medical examination and are exempted from the definition of hearsay. Rule 803(4) provides for the admission of statements made for the purpose of medical diagnosis or treatment and for describing medical history or past or present symptoms, pain, or sensation as reasonably pertinent to diagnosis. The fact that the examination was also conducted in conjunction with evidence gathering does not change the diagnostic nature of the exam.

In *Flores v. State*, 348 Ark. 28, 69 S.W.3d 864 (2002), our supreme court adopted a test that was articulated by the Eighth Circuit in *Iron Shell*, 633 F.2d 77, to assist in determining whether hearsay evidence fits within the medical-treatment exception of Arkansas Rule of Evidence 803(4). The two-prong test asks first whether the declarant's motive is consistent with the purpose of the rule; and second, whether it is reasonable for the physician to rely on the information in diagnosis or treatment. *Flores*, *supra.*

Here, Tiarks challenges MV's complaints of "butt pain" and her disclosure that someone "wrapped a towel around her neck." MV's complaint regarding the location of her pain clearly falls under the exception because it would guide the nurse examiner as to where her injuries were. As for MV's statement that someone had "wrapped a towel around her

neck," that information informs the nurse of the mechanism of potential injury, explains why there was petechiae on the child's face, and helps rule out potential causes for the injuries presented. As for MV's statement characterizing Tiarks as "mean," the Arkansas Supreme Court has expressly held that the medical-treatment exception to the hearsay rule found in Rule 803(4) permits hearsay identifying the perpetrator in the special case of a child-abuse victim when the abuser is a member of the child's immediate household, and the statement is made in the course of a medical examination for the purpose of diagnosis and treatment. *See generally Hawkins v. State*, 348 Ark. 384, 72 S.W.3d 493 (2002). Such an identification is pertinent to the medical professional's prevention of a recurrence of abuse, which is a paramount consideration in the treatment of children who have been sexually abused in the home. *Id.* As a result, it was not clear error for the circuit court to find that these statements were not hearsay and to deny Tiarks's claims on this issue.

### 3. *Failure to call a witness – guilt phase*

Tiarks next argues that counsel was ineffective for failing to call Arkansas State Crime Laboratory technician Colton Waters to testify that MV was excluded as a contributor to any significant amount of DNA recovered from a sex toy found in the home. He claims that the failure to introduce this evidence left the jury with the impression that Tiarks assaulted MV with it and that if the jury had been informed that MV's DNA was not found on the sex toy, it might not have convicted him. His argument, however, is misplaced.

Here, eight DNA swabs were taken from the sex toy. MV's DNA was excluded from the identifiably female components of seven of those samples. The eighth sample, however,

13

contained a DNA mixture indicating the presence of DNA from more than three individuals and was inconclusive for comparative purposes due to the complexity of the mixture. Thus, the samples did not actually rule out the presence of MV's DNA on the toy as suggested by Tiarks. As a result, if Waters had been called to testify, he would not have testified that MV's DNA was not found on the sex toy and, in fact, would likely have testified that MV's DNA could have been on the sex toy. Moreover, this strategy allowed defense counsel to assert in closing arguments that there was no testimony from the crime lab and that the results of testing were not determinative to the outcome of the case. Thus, counsel's strategy to stipulate to the test results was objectively reasonable.

Moreover, our supreme court has held that when it comes to an ineffective-assistance-of-counsel claim and an attorney's decision to not call a witness, such matters are considered trial strategy and fall outside the purview of Rule 37. *Barefield*, *supra*; *Feuget v. State*, 2015 Ark. 43, 454 S.W.3d 734. Therefore, counsel's decision to pursue a different approach and not call Waters as a witness falls within the realm of trial strategy and is excluded from Rule 37 as a ground for a successful ineffective-assistance-of-counsel claim. Accordingly, Tiarks's argument fails here as well.

### 4. *Opening the door to prior allegations of sexual misconduct*

Tiarks next claims that trial counsel was ineffective by opening the door to prior sexual-misconduct allegations made by Tiarks's biological children and also those arising from his practice as a physical therapist. Before trial, the State agreed it would not introduce any evidence regarding those allegations unless Tiarks opened the door. Tiarks claims that

14

his trial counsel did just that when he asked Detective Boothman whether he had looked into any other suspects and when he asked Tiarks's mom, Gail Harris, if she was aware that Tiarks's ex-wife had claimed he had sexually abused their children in 2018. The circuit court found that this line of questioning had opened the door into evidence regarding the alleged sexual abuse of his children, including his daughter's claim that he would sometimes touch her vagina in the mornings and his son's unexplained anal bleeding after returning from Tiarks's home. Then, when asked her opinion about Tiarks's peacefulness in the community, Harris replied, "There's never been a problem out of him ever. He's a mentor and a healer of people and that's what he loves." This testimony then opened the door to questions regarding accusations of sexual misconduct and loss of his physical therapist's license.

We take each of these claims in turn. First, it appears that part of defense counsel's theory of the case was that the police had tunnel vision and did not look into any suspects other than Tiarks and that someone, possibly Leah Brasuell's brother, was the actual offender. In closing argument, counsel highlighted the fact that Tiarks was the only person law enforcement was investigating, questioned whether they should have expanded the scope of their investigation, and queried whether their approach was reasonable for such a serious offense. Given the nature of the child's injuries, the timeframe in which the assault happened, and the limited number of people with access to the child during that time frame, this approach was a viable—and perhaps the only—strategy available to Tiarks to support his claim of innocence.

15

Counsel then presented evidence that the prior allegations were unsubstantiated, thereby rebutting and attempting to neutralize any prejudice that its admission presented. This was done, in part, through Harris's testimony concerning the nature of the prior allegations. Through her testimony, he was able to inform the jury that Tiarks's relationship with his ex-wife, who reported the allegations, was extremely strained after their divorce and that the allegations had been "completely unfounded."

As for the prior allegations of misconduct by a former physical-therapy client, counsel was attempting to put on evidence of Tiarks's good behavior, and it backfired. Trial counsel's decision whether to call a witness is generally a matter of "trial strategy that is outside the purview of Rule 37.1." *Stiggers v. State*, 2014 Ark. 184, at 4, 433 S.W.3d 252, 256. Strategic decisions supported by reasonable professional judgment are not a proper basis for Rule 37 relief, and "[t]his is true even where the chosen strategy was improvident in retrospect." *Sartin v. State*, 2012 Ark. 155, at 4, 400 S.W.3d 694, 697.

Tiarks has, thus, once again failed to show that counsel's performance was deficient.

5. *Failure to prove prior sexual abuse allegations were unsubstantiated*

As a corollary to the above arguments, Tiarks argues that counsel failed to adequately explain to the jury that the sexual-abuse allegations involving his biological children were unsubstantiated. He claims that Detective Boothman testified that the investigation was inactive and had denied that it was "discredited." As a result, Tiarks claims that the jury was left with the impression that he had sexually abused one or more of his children and that law enforcement had not cleared him.

The evidence at trial, however, indicates otherwise. Detective Boothman testified that Tiarks's ex-wife had made the allegations and that there had been no disclosure by the children themselves. He further explained that there was "no physical evidence to corroborate any assertion that [the children] were abused" and that there was "no evidence [Tiarks] committed the [allegations] from 2018." Tiarks' mother, likewise, testified that Tiarks's relationship with his ex-wife was strained; that after their divorce, it became "extremely strained"; and that his ex-wife had threatened to come forward with those allegations when they divorced. She stated that she was aware of the allegations made by his ex-wife and claimed that they were "completely unfounded." Thus, Tiarks's claims that counsel failed to discredit the allegations is simply untrue.

6. *Failure to object to State's comment on MV's refusal to testify*

Tiarks next argues that trial counsel was deficient for failing to request a mistrial after the State's remarks regarding MV's refusal to testify. At trial, MV was the State's last witness. The prosecutor announced to the jury that the State was calling her to the stand, and the prosecutor was going to exit the courtroom to "try to bring her in." The prosecutor, however, returned to the courtroom without MV and stated, "Your Honor, thank you for your patience. [MV] refuses to come in the courtroom . . . so at this time the State would rest." At the bench, the prosecutor informed the court that MV was scared to testify. Defense counsel did not object and instead opted to move for a directed verdict. Tiarks now claims that the prosecutor's remarks indicated to the jury that MV was afraid of Tiarks and that she could not bear to be in the same room with him, thereby "implying he was both guilty and

17

a monster." He likens this to the impropriety of calling a witness to the stand when the party knows the witness will invoke the privilege and refuse to testify.

Here, however, there was no evidence that the State knew MV would refuse to testify. In fact, both the State and the defense structured their opening statements and proceeded with trial under the mistaken belief that MV would be testifying. Nothing about the prosecutor's statement in front of the jury revealed that the child was scared of Tiarks; that reference was made at the bench and out of the jury's hearing. The jury was aware that MV was only four years old, and it would not be unusual for a child that age to be shy or apprehensive and refuse to testify under the best of circumstances. It was clear from opening statements that the parties expected MV to testify, and the State's remarks did nothing more than inform the jury that she would not be testifying. There simply is no evidence that the jury was tainted by the prosecutor's innocuous remarks in this regard, nor was it so prejudicial that a mistrial was warranted.

A mistrial is a drastic remedy and should be declared only when there is error so prejudicial that justice cannot be served by continuing the trial, and when it cannot be cured by an instruction to the jury. *Sawyers v. State*, 2024 Ark. App. 590, 704 S.W.3d 126. Here, the State attempted to call MV as its next witness. When she refused to testify, the State told the court, in front of the jury, that the witness would not be testifying. Given these circumstances, we cannot find error in the State's explanation to the jury; thus, no mistrial was warranted.

7. *Failure to object to witness's implication that Tiarks fit the profile of a sex offender*

18

Tiarks next argues that counsel was ineffective for allowing MV's uncle, Tim Brasuell, to testify without objection that, as a former police officer with experience working with sex offenders, he should have realized that "something was off" about Tiarks. Tiarks argues that this testimony improperly invaded the province of the jury.

The State, however, counters that Tim did not profile Tiarks as a sex offender; rather, Tim testified that he "couldn't have known back then that [Tiarks] was that type of guy" and that if he had known Tiarks was capable of hurting MV, he would have done something a long time ago. Thus, while he did testify that something about Tiarks felt "off," Tiarks had done nothing to make Tim think he was a pedophile, even with his years of experience. Tim arguably did the exact opposite of what Tiarks is now claiming—he implied that Tiarks did *not* fit his idea of a sex offender. As such, the failure to object to this testimony was not deficient.

### 8. *Failure to object – closing arguments*

Tiarks also argues that trial counsel was ineffective for failing to object to the State's use of the prior sexual-abuse allegations during closing arguments and in shifting the burden of proof to him to explain why his eight-year-old son did not testify regarding the sheets that were found in the wash after the alleged assault.[5] As with the other arguments, these are also without merit.

---

[5]Tiarks claimed that the boy had wet the bed and that the washed sheets were not an attempt by Tiarks to destroy evidence.

First, as to the use of the prior sexual-abuse allegations during closing arguments, the evidence of those allegations was properly admitted into evidence. Therefore, it was not improper for the State to reference them in closing arguments. Accordingly, an objection to such argument would have been useless. As to the alleged burden shifting, Arkansas appellate courts have held that the State may comment in closing argument that a defendant did not call witnesses (other than the defendant) to establish facts or theories about the case and, in doing so, does not shift the burden of proof to the defense. *E.g.*, *Rounsaville v. State*, 2011 Ark. 236; *Durden v. State*, 93 Ark. App. 1, 216 S.W.3d 145 (2005). As long as evidence can be solicited from someone other than the accused, it is proper to comment on the failure of the defense to produce it. *Durden*, *supra*. Similarly, the Second Circuit Court of Appeals has stated, "It is established that the government may comment on a defendant's failure to call witnesses to support his factual theories." *United States v. Bautista*, 23 F.3d 726 (2d Cir. 1994) (citations omitted). Thus, the comment was not improper burden shifting, and counsel was not ineffective for failing to object to it.

9. *Failure to make a cumulative-error objection*

Tiarks next contends that trial counsel should have made a cumulative-error objection. He claims that all the improper remarks and evidence elicited at trial combined to deny him a fair trial. An appellant asserting a cumulative-error argument must show that there were objections to the alleged errors individually *and* that a cumulative-error objection was made to the circuit court and a ruling obtained. *Vasquez v. State*, 2022 Ark. App. 328, 652 S.W.3d 586. Tiarks did not do so below.

20

Tiarks argues that his counsel's failure to make a cumulative-error objection resulted in ineffective assistance of counsel. Our supreme court, however, has consistently refused to recognize the doctrine of cumulative error in allegations of ineffective assistance of counsel. *Whiteside, supra; see also, e.g., Noel v. State*, 342 Ark. 35, 26 S.W.3d 123 (2000); *Huddleston v. State*, 339 Ark. 266, 5 S.W.3d 46 (1999); *see also State v. Franklin*, 351 Ark. 131, 89 S.W.3d 865 (2002); *State v. Hardin*, 347 Ark. 62, 60 S.W.3d 397 (2001) (holding that it was erroneous for the circuit court to entertain a claim of cumulative error in a *Strickland* analysis). Thus, his claim, however convincing, must fail.

10. *Failure to call witnesses – sentencing phase*

Tiarks's tenth and final argument on appeal is that trial counsel was ineffective for failing to call any witnesses or introduce any mitigating evidence during the sentencing phase of the trial. The State notes that Tiarks had already presented six witnesses during the guilt phase who testified to his professionalism, peacefulness, truthfulness, and family orientation. Because the jury is allowed to consider evidence presented at the guilt phase during the sentencing phase, any such evidence would have been cumulative to what was already presented. The State further claims that because the jury had before it everything Tiarks complains should have been before it, counsel was not ineffective. We agree.

Our courts have recognized that an attorney can be found to have been ineffective for failing to present mitigating evidence. *State v. Smith*, 368 Ark. 620, 249 S.W.3d 119 (2007). However, when a petitioner asserts that his attorney was ineffective for failure to call a witness or witnesses, it is incumbent on the petitioner to name the witness, provide a summary of

21

that witness's testimony, and establish that the testimony would have been admissible. *James v. State*, 2013 Ark. 290 (per curiam).

The circuit court here denied Tiarks's claim on this ground because Tiarks failed to name any witnesses he believed should have been called, failed to provide a summary of the witness's testimony, and failed to establish that the testimony would have been admissible. As a result, the court found his allegations conclusory and that they did not merit further consideration.

The circuit court was correct. A conclusory claim is not a ground for postconviction relief. *Glaze v. State*, 2013 Ark. 141 (per curiam). The burden is entirely on the petitioner in a Rule 37.1 proceeding to provide facts that affirmatively support the claims of prejudice. *Thacker v. State*, 2012 Ark. 205 (per curiam); *Jones v. State*, 2011 Ark. 523 (per curiam); *Payton v. State*, 2011 Ark. 217 (per curiam). Conclusory statements without factual substantiation are not sufficient to overcome the presumption that counsel was effective. *Jordan v. State*, 2013 Ark. 469, at 12.

## B. Prejudice

In any event, even if Tiarks can prove that his trial counsel was deficient in his performance, he cannot prove prejudice. The evidence of Tiarks's guilt at trial was overwhelming. The evidence showed that MV was perfectly fine on the afternoon before the alleged assault. She also was fine when her mother left MV alone in Tiarks's care while she went to Walmart with MV's sister. MV was asleep when they returned, and she did not awake until the next morning. That morning, Tiarks discovered blood when he took MV to the

bathroom. When examined, doctors discovered petechiae and ligature marks around MV's face and head as well as blood caused by vaginal tearing. Because there was no evidence that anyone other than Tiarks had been granted unfettered or exclusive access to MV during the time of the alleged abuse, the evidence of guilt was overwhelming.

## C. Evidentiary Hearing

In the alternative, Tiarks argues that this court should reverse and remand for an evidentiary hearing. He claims that an evidentiary hearing was necessary to determine whether counsel's failure to object and to call witnesses was reasonable trial strategy. However, such a hearing, while possibly helpful, was not necessary here.

The circuit court should hold an evidentiary hearing in a postconviction proceeding unless the files and record of the case conclusively show that the petitioner is entitled to no relief. *Davis v. State*, 2021 Ark. App. 210. When the circuit court concludes without a hearing that the petitioner is not entitled to relief, Rule 37.3 of the Arkansas Rules of Criminal Procedure requires the circuit court to make written findings specifying the parts of the record that form the basis of the circuit court's decision. *Id.* If the circuit court fails to make such findings, it is reversible error unless the record before this court conclusively shows that the petition is without merit. *Id.* Here, the circuit court made extensive written findings and cited to evidence in the record in denying Tiarks's claims.

Moreover, a petitioner making a claim of ineffective assistance of counsel must show that counsel's performance fell below an *objective* standard of reasonableness. *State v. Lacy*, 2016 Ark. 38, 480 S.W.3d 856; *Mancia v. State*, 2015 Ark. 115, 459 S.W.3d 259. We have

further noted that counsel should be "evaluated according to professional standards of reasonableness, not by his own subjective assessment of his performance." *Howard v. State*, 367 Ark. 18, 33, 238 S.W.3d 24, 36 (2006). Thus, it was unnecessary for the court to hold a hearing to determine whether counsel's conduct constituted reasonable trial strategy; such could be gleaned from the record before us.

For the foregoing reasons, we affirm.

Affirmed.

HARRISON and TUCKER, JJ., agree.

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*; and *Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Walker K. Hawkins*, Ass't Att'y Gen., for appellee.